

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| LAWRENCE MICKEY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SC93591 |
| | ) | |
| BNSF RAILWAY COMPANY and | ) | |
| SAFECO INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Appellants. | ) | |

### APPEAL FROM THE ST. LOUIS CITY CIRCUIT COURT
**Honorable John J. Riley, Judge**

*Opinion issued July 8, 2014*

Lawrence Mickey prevailed in a Federal Employers' Liability Act (FELA) suit against Burlington Northern Santa Fe Railway Company (BNSF) and received a general verdict of $345,000. The trial court entered judgment in the amount of the verdict plus interest and costs for a total of $348,731. After the judgment was affirmed on appeal, BNSF tendered $368.480.67, which was $12,820.80 less than what BNSF then owed on the judgment plus costs and accumulated interest. It did so because it *sua sponte* had determined that, under the Railroad Retirement Tax Act (RRTA), *26 U.S.C. § 3201 et seq.*, it was required to treat the entire judgment as if it were for lost wages and, therefore, subject to RRTA withholding taxes. The trial court found that BNSF had failed to satisfy

the judgment and ordered BNSF's surety, Safeco Insurance Company, to pay Mr. Mickey the $12,820.80 that BNSF failed to pay. BNSF and Safeco appeal this ruling.[1]

This Court affirms. The RRTA does not require employers to withhold RRTA taxes on a personal injury plaintiff's FELA award. Damages received through a suit or settlement for personal injuries, including damages for lost wages, are not subject to income tax or, normally, to retirement taxes. BNSF is incorrect in arguing that the RRTA creates an exception to this law for railroad retirement taxes. The statute on which BNSF relies is part of an entirely separate act, the Railroad Retirement Act (RRA), *45 U.S.C. § 231 et seq.*, which governs railroad *retirement benefits*. It is inapplicable to the *tax* question at issue here. Even were it relevant to this issue, that statute, by its terms, applies only if a portion of the award is for lost wages. The verdict was a general one, however, and this Court rejects BNSF's argument that merely because lost wages were requested, this Court is required, legally or factually, to presume that a portion of the award was for lost wages. The makeup of a jury's general verdict award is a matter that this Court has held is "within the bosom of the jury" and is not a subject for speculation by this Court. *Anglim v. Mo. Pac. R.R. Co., 832 S.W.2d 298, 309 (Mo. banc 1992).* BNSF's appeal fails for both of these reasons.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Lawrence Mickey worked for BNSF as a yard conductor and switchman for 40 years. In 2007 he learned that he had permanent disability in his back, as well as disabling injuries to his knees, legs, and feet, and he was unable to return to work. In

---

[1] This Court refers to BNSF and Safeco collectively as BNSF.

2008, Mr. Mickey filed a petition against BNSF under FELA[2] seeking damages for these serious physical injuries as well as for his related emotional injuries, past and future medical expenses, and lost wages and benefits.

The trial court submitted the case to the jury using a general verdict form based on Missouri Approved Instruction (MAI) 36.01. The jury returned a plaintiff's verdict that stated, "We, the undersigned jurors, assess the damages of Plaintiff Larry Mickey at $345,000." The trial court entered judgment on the verdict plus costs and post-judgment interest. At no time during the instruction conference, the submission of the instructions, or after judgment did BNSF object to the use of a general verdict form based on MAI 36.01 or request or show it was entitled to the use of a special verdict form or special interrogatories.

BNSF appealed the judgment and filed a supersedeas bond in the amount of $500,000 that was executed by BNSF as principal and Safeco as surety. The court of appeals affirmed the judgment in *Mickey v. BNSF Railway Company, 358 S.W.3d 138 (Mo. App. 2011).*

After the appeal, BNSF tendered Mr. Mickey the judgment amount, costs, and interest but withheld $12,820.80. Mr. Mickey objected that the check was insufficient to satisfy the judgment and filed a motion under Rule 81.11 requesting the trial court to enter judgment against Safeco on the supersedeas bond as a result of BNSF's failure to satisfy the judgment. BNSF and Safeco urged the trial court to find that BNSF fully

---

[2] FELA provides railroad employees a right to recover for injuries sustained while employed by the railroad that are caused "in whole or in part from the negligence of any of the officers, agents, or employees" of the railroad. *45 U.S.C. § 51.*

3

satisfied the judgment because it withheld the missing $12,820.80 to remit to the IRS as Mr. Mickey's share of railroad retirement withholding taxes that BNSF claimed were due on the $345,000 in damages awarded if one presumes that the damages are made up entirely of lost wages.[3] BNSF acknowledged that the IRS had not claimed in this, or any other published case, that it was required to withhold railroad retirement taxes – taxes comparable to Social Security and Medicare – but BNSF paid this amount *sua sponte* because, it said, it believed that the RRTA so requires.

During this same time period, BNSF filed an interpleader action in the United States District Court for the Eastern District of Missouri naming Mr. Mickey, the IRS, and the Railroad Retirement Board as defendants, and deposited the $12,820.80 with the federal district court for it to determine who was owed what amount. The IRS declined to enter its appearance. BNSF then chose *sua sponte* to pay the IRS the $12,820.80, and the interpleader was dismissed.

---

[3] The RRTA contains two tiers of taxes. *26 U.S.C. § 3201*. The Tier I taxes are calculated using the same formulas as Social Security and Medicare taxes are under the Federal Insurance Contributions Act (FICA), *26 U.S.C. 3101 et seq.*, and it is assessed equally against the employer and employee. *Id. at § 3201(a); RAILROAD RETIREMENT TAX ACT (RRTA) DESK GUIDE (JANUARY 2009), available at http://www.irs.gov/Businesses/Railroad-Retirement-Tax--Act-(RRTA)-Desk-Guide-(January-2009)#2 (last visited June 23, 2014)* (copy of document on file with this Court). Included in the Tier I tax is the Medicare tax owed by railroad workers. *RRB Form RB-20 (January 2014), available at http://www.rrb.gov/forms/opa/rb20/rb20.asp (last visited June 10, 2014)* (copy of document on file with this Court). The Tier II tax uses a separate annual wage base and tax rate from those applicable for Tier I, and it is not assessed equally against the employer and employee, with the employer paying a significantly greater share of this tax. *26 U.S.C. § 3201(b); RRTA DESK GUIDE, supra*. BNSF claims Mr. Mickey's award is subject to both Tier I and Tier II taxes. This Court refers to these taxes collectively as RRTA taxes.

4

On May 24, 2012, the trial court agreed with Mr. Mickey that, in withholding the $12,820.80, BNSF had failed to satisfy the judgment. It entered judgment against Safeco for $12,820.80 and post-judgment interest. BNSF and Safeco subsequently moved to vacate and modify the May 24 judgment on the ground that BNSF fully satisfied the judgment because it was required to withhold the $12,820.80. The court overruled this motion. BNSF and Safeco appealed the trial court's entry of judgment against Safeco and its overruling of their motion to vacate and modify the judgment.[4] After opinion by the court of appeals, this Court granted transfer. *MO. CONST. art. V, § 10*. This Court affirms.

## II.    STANDARD OF REVIEW

Construction of a statute is a question of law. *City of Springfield v. Sprint Spectrum, L.P., 203 S.W.3d 177, 182 (Mo. banc 2006)*. This Court reviews issues of law *de novo. Crockett v. Polen, 225 S.W.3d 419, 420 (Mo. banc 2007).*

## III.    RRTA TAXES MAY NOT BE WITHHELD FROM THE JUDGMENT

This case presents the question whether, when a railroad worker is injured on the job and obtains a general verdict against his employer for negligence under FELA, the judgment is subject to railroad retirement withholding taxes under the RRTA, even though the damages are not considered income for income tax purposes and no comparable Social Security or Medicare withholding is required for comparable tort cases involving non-railroad workers. This Court answers in the negative.

---

[4] The United States, through the Department of Justice, filed a brief on appeal as *amicus curiae* in support of BNSF, and the American Association for Justice filed a brief on appeal as *amicus curiae* in support of Mr. Mickey.

### A. A FELA Judgment Is Not Taxable "Compensation" Under the RRTA

Section 61(a) of the Internal Revenue Code (Code) "provides a broad definition of 'gross income,'" *Comm'r of Internal Revenue v. Schleier, 515 U.S. 323, 327 (1995)*, stating "[e]xcept as otherwise provided in this subtitle, gross income means all income from whatever source derived." *26 U.S.C. § 61(a)*. That definition does not include personal injury damages awards, however, for the Code specifically excludes from gross income "the amount of any damages received … on account of physical personal injuries or physical sickness." *26 U.S.C. § 104(a)(2)*. Treasury regulations explain that section 104(a)(2) pertains to "an amount received (other than workers' compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." *26 C.F.R. § 1.104-1(c)*.

The United States Supreme Court addressed the meaning of the exclusion of personal injury damages from the definition of income for tax purposes in *Schleier, 515 U.S. at 333-34*. *Schleier* holds that income taxes are not owed on a damage award if it was received: (1) through prosecution or settlement of an action based upon tort or tort type rights and (2) on account of personal injuries or sickness. *Id. at 333-34; accord, Norfolk v. Western Ry. Co. v. Liepelt, 444 U.S. 490, 496 (1980)*.

In other words, the Code provides that damages an employee receives on account of a personal injury award through suit or settlement are not subject to income tax, even if a portion of the award is for lost wages. *Schleier, 515 U.S. at 330-31.*[5] But, because

---

[5] The Court decided *Schleier* the year before Congress amended section 104(a)(2) of the Code in the Small Business Job Protection Act of 1996 by adding the modifier "physical"

6

the award at issue in *Schleier* was not for personal injury but rather for discrimination in employment, the Supreme Court concluded this exclusion did not apply there. *Id. at 332*. The Supreme Court explained that unlike in personal injury cases, in a discrimination case, even though an employee may sustain pain and suffering from such discrimination, the lost wages – and any other resulting award – stem from the discrimination, not personal injury, so the lost wages are not excluded under section 104(a)(2) of the Code. *Id. at 330-31*.

Personal injury awards likewise are not subject to Federal Insurance Contributions Act (FICA)[6] withholding taxes, which fund Social Security and Medicare benefits and closely parallel RRTA withholding taxes. An award that does not constitute gross income cannot be subject to FICA withholding taxes. This is because, as the Supreme Court states in *Central Illinois Public Service Co. v. United States, 435 U.S. 21, 29 (1978)*, the term "wages" as used in FICA is narrower in scope than "gross income." *See also Rowan Cos., Inc. v. United States, 452 U.S. 247, 254 (1981)* ("[M]any items qualify as income and yet clearly are not wages…. '[W]ages is a narrower concept than income'"); *Royster Co. v. United States, 479 F.2d 387, 390 (4th Cir. 1973)* ("Wages are merely one form of income"); *Anderson v. United States, 929 F.2d 648, 654 (Fed. Cir. 1991)* ("[P]ayments cannot be treated as 'wages' under FICA if they are not first made 'income'"). For this reason, federal circuit courts of appeal hold that a personal injury

---

to limit the scope of personal injuries and sickness. *Pub. L. No. 104-188, § 1605*. This change does not affect the instant matter, and *Schleier*'s holding remains intact, as modified by the amendment. *See, e.g., Sanford v. Comm'r of Internal Revenue, 2008 WL 2491676, at *3 (U.S. Tax Ct. 2008)*.
[6] *26 U.S.C. 3101 et seq.*

award, which is excluded from income taxes under section 104(a)(2) of the Code, necessarily also is excluded from FICA withholding taxes on wages. *See, e.g., Gerbec v. United States, 164 F.3d 1015, 1025-26 (6th Cir. 1999).* As the United States Court of Appeals for the Fifth Circuit explained in *Dotson v. United States, 87 F.3d 682, 689 (5th Cir. 1996)*: "Damages not included in the tax code's definition of 'income' are not considered 'wages.' As such they are not taxable under FICA." *See also Redfield v. Ins. Co. of North Am., 940 F.2d 542, 548 n.4 (9th Cir. 1991), overruled on other grounds by Schleier, 515 U.S. 323* ("[Personal injury] damages, falling outside the definition of 'income,' could not be regarded as 'wages' for the purposes of [FICA]"). Accordingly, FICA taxes are not withheld from FELA awards.

## B.    *Like FICA Taxes, RRTA Taxes Are Not Withheld from FELA Judgments*

BNSF acknowledges that Mr. Mickey's award is not subject to income tax under section 104(a)(2) of the Code, and case law is clear that comparable awards are not subject to FICA taxes, but BNSF contends, nonetheless, that Mr. Mickey's award is subject to RRTA taxes. Just as FICA taxes an employee's "wages," the RRTA taxes an employee's "compensation." And regulations and case law state that the two terms carry the same meaning. Section 3202 of the RRTA provides in relevant part:

> The [railroad retirement] taxes imposed by section 3201 shall be collected by the employer of the taxpayer by deducting the amount of the taxes from the *compensation* of the employee as and when paid.

*26 U.S.C. § 3202* (emphasis added). Treasury Regulation section 31.3201-1, which corresponds with RRTA section 3201, explains that the RRTA tax is "measured by the amount of compensation received for services rendered as an employee."

8

The RRTA provision that defines the terms used in the RRTA states, "The term 'compensation' means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." *26 U.S.C. § 3231(e)*. The corresponding regulation clarifies that, as used by the RRTA, "*the term compensation has the same meaning as the term wages in [FICA] section 3121(a) … except as specifically limited by the Railroad Retirement Tax Act*." *26 C.F.R. § 31.3231(e)-1(a)(1)* (emphasis added). There is no such specific limitation in the RRTA, and the cases and regulations state that "wages" and "compensation" shall be interpreted consistently for tax withholding purposes. *Id.* Therefore, as stated in *CSX Corp. v. United States, 518 F.3d 1328, 1331 (Fed. Cir. 2008)*, "the term 'wages' in FICA and 'compensation' in the RRTA have the same meaning." The obverse of this rule is that if a payment does not constitute "wages," it also does not constitute "compensation" for these purposes.

It necessarily follows that "compensation" received as a part of a personal injury judgment is not subject to RRTA withholding taxes for the same reason that lost wages received as part of a personal injury judgment are not subject to FICA withholding taxes. As discussed above, a payment for lost wages is normally subject to FICA withholding taxes, *Gerbec, 164 F.3d at 1026*, but where such payment is on account of a personal injury suit or settlement, it is not, *id.; Dotson, 87 F.3d at 689*. This is because the lost wages damages award is excluded from income under section 104(a)(2) of the Code, and a payment that does not qualify as income cannot qualify as wages. *See, e.g., Dotson, 87 F.3d at 689*. Consequently, such a payment is not subject to FICA's taxes on "wages." Likewise, lost wages obtained through a personal injury suit are not taxed under the

9

RRTA because they do not constitute income and, therefore, do not qualify as taxable "compensation" under the RRTA.

BNSF seeks to avoid this result by asking this Court to look to an entirely separate act, the RRA, and treat section 231(h)(2) of the RRA as if it were incorporated into the RRTA. Section 231(h)(2) provides:

> If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless … specifically apportioned to factors other than time lost …

*45 U.S.C. 231(h)(2)*. The reason BNSF directs this Court to the RRA is obvious. If the Court presumes that some of the award is for lost wages, then BNSF believes it can rely on section 231(h)(2) of the RRA to argue that the entire award is deemed to be for lost wages and is subject to RRTA withholding taxes.

The Iowa Supreme Court accepted a similar argument in a case that was handed down during the pendency of this appeal, *Phillips v. Chicago Central & Pacific RR. Co., No. 13-0729, 2014 WL 2900952, at \*15 (June 27, 2014)*. *Phillips* holds that the RRTA's definition of compensation includes lost wages and that lost wages received on account of a FELA personal injury claim are subject to withholding taxes under the RRTA. *Id.* It also holds that RRA section 231(h)(2) renders a railroad employee's entire FELA award subject to RRTA withholding taxes when the jury is instructed on lost wages. *Id. at \*7*.

This Court finds *Phillips* unpersuasive. In reaching its result, *Phillips* specifically recognized that the current version of the RRTA *does not say* that compensation includes pay for lost wages or that RRTA taxes must be withheld from personal injury awards. *Id.*

10

*at \*3.* Indeed, in 1983 Congress deleted from RRTA section 3231(e) language that specifically included lost wages within the definition of "compensation" and that instructed courts that personal injury payments that included pay for time lost were to be deemed to be entirely for time lost unless otherwise specifically provided.[7] *Phillips* notes, however, that the RRA states what the RRTA no longer does, as it defines compensation as including payments for time lost and it contains a presumption that a personal injury payment that includes pay for time lost is considered to be entirely for time lost. *Id. at \*4.* Despite these amendments to the RRTA definition of compensation,

---

[7] Prior to the 1983 amendments, RRTA section 3231(e)(1)-(2) provided:

(1) The term "compensation" means any form of money remuneration earned by an individual for services rendered as an employee … including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost....

(2) A payment made by an employer to an individual through the employer's payroll shall be presumed, in the absence of evidence to the contrary, to be compensation for service rendered by such individual as an employee of the employer in the period with respect to which the payment is made. An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury …. If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

(Emphasis added).

The 1983 amendments removed from this definition of compensation all language: (a) relating to payments for time lost on account of personal injury; (b) equating time lost with compensation; (c) setting forth the procedure by which to calculate the amount of a personal injury award that constitutes payment for time lost; and (d) providing a presumption that a personal injury payment that includes pay for time lost is to be treated as entirely pay for time lost. *26 U.S.C. § 3231(e)(1); Phillips, 2014 WL 2900952, at \*4.*

11

*Phillips* concludes there is "no logical reason" to believe that this deletion means that Congress intended a different rule to apply to the RRTA than to the RRA. *Id. at 7.*

There are many reasons why the term "compensation" has a different meaning under the RRTA than it has under the RRA. First, *Phillips* simply ignores the fact that, even assuming that the term "compensation" includes other types of pay for lost wages,[8] damages for lost wages due to personal injury are treated differently than are other lost wages under both section 104(a)(2) of the Code and federal case law. *Schleier, 515 U.S. at 333-34.* *Phillips* does not even mention the fact that amounts recovered in suits or settlements for personal injury are not included within the definition of income or wages, and are not subject to income or FICA taxes, and this Court finds the failure to address this argument fatal to its position.

Second, this Court notes that the distinction *Schleier* drew between receipt of lost wages resulting from personal injury compared with lost wages resulting from, for example, wrongful termination, is important for a separate, but related, reason. When the claim is for wrongful termination, an award of lost wages is for wages that the plaintiff would have earned while employed by the defendant but for the discrimination – that is, back pay and front pay.

But this is not so for damages awarded for personal injuries. It is long established in Missouri that personal injury damages may include an award for lost earning capacity

---

[8] *Phillips*' discussion of *Chevron* deference to a treasury regulation that states that compensation includes "pay for time lost," *see 26 C.F.R. 31.3231(e)-1(a)(4)*, does not address the exception for personal injury payments, nor is it based on any language in the RRTA and, therefore, does not govern here.

12

including both the loss of earnings between the date of the injury and the date of judgment and the loss of future earnings. *Callahan v. Cardinal Glennon Hospital, 863 S.W.2d 852, 872 (Mo. banc 1991).* While lost earning capacity most often is shown by evidence of what the plaintiff had earned and was reasonably likely to earn at the job he had at the time of the injury, it need not be so limited, for the plaintiff is not suing for lost back or front pay, or for "time lost," but for the loss of the capacity to earn. *Id.* It would be speculative to presume that any future lost earnings necessarily would have been subject to the RRTA if a plaintiff presented evidence that established with reasonable certainty that the plaintiff had lost the opportunity for employment in other occupations as well, occupations not subject to the RRTA.

Third, as noted above (and perhaps for this reason), Congress amended the RRTA's definition of "compensation" to eliminate all references to personal injury payments and other language comparable to that in the RRA's definition. Further, in holding that the compensation nonetheless carries the same meaning under the RRA as the RRTA, *Phillips* ignores the fact that under the federal regulations the definition of "compensation" is interpreted by reference to the Internal Revenue Code, not to the RRA. As previously noted, Treasury Regulation section 31.3231(e)-1(a)(1) states that as used by the RRTA, "the term compensation has the same meaning as the term wages in [FICA] section 3121(a) … except as specifically limited by the Railroad Retirement Tax Act." But by relying on a specific limitation in the RRA rather than in the RRTA, *Phillips* ignores this regulatory requirement.

13

Finally, *Phillips* pays insufficient attention to the different purposes of the RRA and the RRTA. The RRA and RRTA are separate statutes that are administered by separate agencies and serve different purposes. Rather than receive Social Security benefits, railroad employees receive benefits under the RRA, which was enacted in 1937 to establish a system of annuity, pension, and death benefits. *R.R. Ret. Bd. v. Duquesne Warehouse Co., 326 U.S. 446, 447 (1946).* It established the Railroad Retirement Board (RRB) as an independent agency in the executive branch to administer the benefits programs of the RRA. *45 U.S.C. §231f(a).* The primary source of funding for RRA benefits is taxes collected under the RRTA. *45 U.S.C. § 231n(a).*

Although the RRA and the RRTA overlap to the extent that taxes collected under the RRTA fund benefits provided under the RRA, they differ in significant ways. Most basically, the acts are administered by separate agencies: the RRTA is part of the Internal Revenue Code and is administered by the Internal Revenue Service of the Department of the Treasury, while the RRA is administered by the Railroad Retirement Board, which is an independent agency in the executive branch.[9]  *26 U.S.C. § 3201; 45 U.S.C. § 231.* And, the RRA is a remedial act that provides benefits to railroad workers, while the RRTA is a tax act. For this reason, the RRB general counsel stated in a letter dated June 23, 2010, responding to an opinion request: "With respect to any employment taxes due under the Railroad Retirement Tax Act (26 U.S.C. §§ 3231-3241), I must advise that … I

---

[9] As authorized by section 6103(I)(1)(c) of the Code, the RRB interacts with the IRS to the extent that the RRB conducts investigations and audits relating to the RRTA's coverage and sends its analyses and opinions in reports to the IRS, but it is the IRS that then determines whether to assess RRTA taxes. *RRTA DESK GUIDE, supra.*

14

have no authority to provide advice concerning taxpayer obligations arising under that Act."

Further, the reason the RRA deems any personal injury payment that includes some pay for time lost to be entirely for time lost is to help workers qualify for RRA benefits. Under the RRA, if an employee is injured or unable to return to work, he may be eligible for disability annuities. *45 U.S.C. § 231a(a)(1)(iv)-(v)*. Qualification for such annuities requires the worker to have certain minimum years of railroad service, *id.; § 231a(a)(1)*, and the benefits an employee receives under the RRA are based on the employee's earnings and length of service, *§ 231b(b)*. As the term "compensation" is used throughout the RRA, it applies only to creditable compensation for calculating annuities. *See, e.g., § 231a; § 231b*. Remedial acts are interpreted liberally in favor of accomplishing their purpose, *Hagan v. Dir. of Revenue, 968 S.W.2d 704, 706 (Mo. banc 1998)*, and RRA section 231(h)(2)'s broad treatment of payments that include some damages for lost wages as being entirely on account of lost wages thus advances the RRA's remedial purpose. The purpose of this definition of "compensation" is not to increase employee tax liability, for, as discussed above, the RRA is not a tax act. Interpreting RRA section 231(h)(2) to apply to the RRTA in the manner BNSF advocates has the effect of limiting the amount of an award an employee would receive and is inconsistent with the Act's remedial purpose.

These foundational distinctions confirm that section 231(h)(2) of the RRA does not determine the scope of taxable compensation under the RRTA.[10] Moreover, the approach argued by BNSF and adopted by *Phillips* ignores the fact that the RRTA has its own definition of "compensation" that does not require taxation of personal injury damages. No credible reason is given by the parties to this suit or the Iowa Supreme Court's opinion in *Phillips* why this Court should incorporate a definition of compensation from the RRA into its interpretation of the RRTA in order to determine whether withholding taxes are due on personal injury awards.

Moreover, even were section 231(h)(2) of the RRA applicable, Mr. Mickey's award still would not be subject to RRTA withholding taxes. BNSF bases its entire taxability argument on the presumption that some of the judgment awarded to Mr. Mickey was for lost wages. Without this presumption, section 231(h)(2) is irrelevant, leaving BNSF without the sole basis it asserts to argue that the entirety of Mr. Mickey's award is subject to RRTA taxes.[11]

---

[10] As BNSF observes, in *Heckman v. Burlington Northern Santa Fe Ry. Co., 837 N.W.2d 532, 534, 539-40 (Neb. 2013),* the Supreme Court of Nebraska recently held that the RRA does govern whether RRTA taxes must be withheld. Review of the opinion demonstrates the basis of this error: *Heckman* failed to differentiate between the RRA and the RRTA and actually cited section 231(h)(2) as if it were part of the RRTA. *Heckman* also failed to discuss the cases and regulations equating the meaning of "wages" and "compensation" for FICA and RRTA purposes and the excludability of personal injury awards from gross income. Then, due to a quirk of Nebraska law discussed further below, it determined that section 231(h)(2) of the RRA required it to find the entire personal injury judgment was subject to income tax. BNSF cites to a small number of mostly unpublished trial court decisions that make the same mistake of failing to differentiate between the RRA and the RRTA, but *Heckman* and *Phillips* appear to be the only appellate courts to do so.

[11] As quoted above, section 231(h)(2) of the RRA states, in part:

The fundamental problem with BNSF's argument is that Mr. Mickey's judgment is based on a general verdict that does not state that any part of the award is for lost wages. BNSF acknowledges that in Missouri a general verdict form normally is used and that it did not request, and does not argue it was entitled to use a special verdict form or special interrogatories here that the verdict did not segregate out amounts that the jury awarded for different types of damages claimed.

But, BNSF argues, Missouri law requires this Court to presume that some part of the award is for the lost wages because Mr. Mickey requested lost wages. If the courts engage in this presumption, BNSF argues, then the contradictory requirement in section 231(h)(2) of the RRA would come into play, and courts would have to deem the entire award to be taxable lost wages.

This Court is unimpressed with BNSF's argument that Missouri should adopt a presumption that part of the award is for lost wages because a damage award categorically must be presumed to include some of every type of damages claimed, only so that it can negate this presumption and categorically substitute a contrary statutory requirement that the entire award is deemed to be for lost wages, that is, that every type of damages claimed are *not* in fact part of the award. The award cannot be presumed to include every type of damage at the same time that it is deemed to include only lost

---

> If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.

*45 U.S.C. § 231(h)(2).*

17

wages. This Court will not engage in a pointless act, even if Missouri courts otherwise would recognize such a presumption.

Moreover, BNSF cites no Missouri authority for its argument that this Court must presume that the jury's verdict for Mr. Mickey must have included pay for lost wages simply because Mr. Mickey presented evidence of lost wages at trial. The only authorities BNSF cites for this proposition are *Phillips*, three trial court decisions from other jurisdictions and the Nebraska Supreme Court opinion in *Heckman v. Burlington Northern Santa Fe Railway Co., 837 N.W.2d 532 (Neb. 2013)*. These cases, which are based on prior case law in their own jurisdictions that they believe requires them to presume that a general verdict includes all damages alleged, are not consistent with Missouri law and, so, are not persuasive.

*Heckman* relies on prior *Nebraska* cases stating that Nebraska will presume that a general verdict indicates "the winning party prevailed on all issues presented to the jury." *837 N.W.2d at 537*. *Heckman* reasons that this means that because the plaintiff sought lost wages, some of the plaintiff's award is presumed to include lost wages. It then applies section 231(h)(2) of the RRA to hold that that the entire award was for lost wages. *Id. at 538-39*. *Phillips* follows the same type of analysis under Iowa law. *2014 WL 2900952, at \*7-8.*

Both are inapposite to the resolution of this issue under Missouri law, for both recognize that the now-supplanted court of appeals decision in the instant case stated that Missouri courts do not have a similar presumption and that this means that RRA section 231(h)(2) would not apply to general verdicts in Missouri. *See Phillips, 2014 WL*

18

*2900952, at \*6; Heckman, 837 N.W.2d at 537-38.* They are not authority that such a presumption applies in Missouri. Indeed, such a presumption does not.

Missouri Supreme Court Rule 71.01 provides: "A general verdict is one by which the jury pronounces generally upon all or any of the issues, either in favor of the plaintiff or defendant, and includes a verdict wherein the jury returns a finding of the plaintiff's total damages and assesses percentages of fault." (Emphasis added). In other words, a general verdict is not necessarily presumed to constitute a finding on all issues, for the rule says it may be a pronouncement "upon all *or any*" of the issues presented.

Equally important, what *issues* the jury reached is irrelevant to the question now before this Court. The jury decides whether a plaintiff proved a cause of action or was entitled to recovery on a particular count submitted, and it awards damages proved for various types of losses resulting from an injury. But the application of RRA section 231(h)(2) does not depend on a presumption about what causes of action were submitted or on which theories the jury returned a verdict, but rather on the presumption that when a jury returns a plaintiff's verdict it must have awarded some amount of every type of *damages* claimed by that plaintiff.

The absurdity of this presumption is apparent. Just because a jury returns a verdict for the plaintiff does not mean it gave the plaintiff all of the types of damages he or she requested. *See Sloas v. CSX Transp., Inc., 616 F.3d 380, 389 (4th Cir. 2010)* (refusing to assume the jury gave the plaintiff the entire amount of past lost wages damages he requested where the jury returned a general verdict and plaintiff also sought other damages)*; Welsh v. Burlington Northern, Inc., Emp. Benefits Plan, 54 F.3d 1331, 1339*

19

*(8th Cir. 1995)* ("Because the jury ... rendered a general verdict, though, we have no way of knowing exactly what portion of the $500,000 award was for pain and suffering and what portion was for future lost wages").

For instance, here Mr. Mickey requested damages for, among other claims, pain and suffering for extensive physical injuries, including "injuries to the soft tissues, ligaments, tendons, muscles, blood vessels and nerves of his back, legs, knees and feet; … straining and scarring of the soft tissues, ligaments, tendons, muscles, blood vessels and nerves of his back, legs, knees and feet" and other permanent disabilities to his back and knees, past and future medical expenses, lost health insurance, and lost wages, both past and future.[12]

That the jury found BNSF was liable to Mr. Mickey under FELA does not mean that it awarded him damages for each type of soft tissue injury or scarring or other specific injuries that Mr. Mickey claimed he suffered. It merely means that the jury assessed his damages to be $345,000, the amount of the verdict. Indeed, this verdict

---

[12] In his petition, Mr. Mickey asserted:
> As a direct result of one or more of these negligent acts or omissions, in whole or in part, the Plaintiff suffered injuries to his back, legs, knees and feet; he sustained injuries to the soft tissues, ligaments, tendons, muscles, blood vessels and nerves of his back, legs, knees and feet; he sustained bruising, straining and scarring of the soft tissues, ligaments, tendons, muscles, blood vessels and nerves of his back, legs, knees and feet; he has been caused to undergo severe pain and suffering and will continue to undergo severe pain and suffering; he has sought and received medical care and attention and will continue to receive medical care and attention; he has suffered psychological and emotional injury, mental anguish and anxiety and will continue to suffer psychological and emotional injury, mental anguish and anxiety in the futures; he has incurred medical expenses and will continue to incur medical expenses; he has lost wages and benefits and will continue to lose wages and benefits; all to his damage.

amount is far less than the total of all the damages requested. For these reasons, the general verdict the jury returned means simply that the jury found for Mr. Mickey on "all or any" of the issues presented, *Rule 71.01*; it does not require this Court to presume that the jury found for Mr. Mickey on each of his damage claims. The award, therefore, cannot be presumed necessarily to include lost wages. Rather, as this Court artfully noted in *Anglim, 832 S.W.2d at 309*, "The sum included within the general verdict as compensation for … loss of wages is a matter forever relegated to the bosom of the jury." Section 231(h)(2), therefore, never would come into play even were it dispositive as to the determination of taxes under the RRTA when some of a personal injury award is for lost wages.

## IV.    CONCLUSION

Mr. Mickey's judgment is not subject to RRTA withholding taxes both because the RRTA does not make lost wages received on account of a FELA personal injury suit subject to RRTA taxes and because there is no basis for a presumption that part of the award was for lost wages or that any loss in earning capacity precluded him from taking jobs that would not have been subject to RRTA taxes. For these reasons, the trial court did not err in overruling BNSF's motion to vacate and modify the judgment or in holding that Safeco was liable on its surety bond for the portion of the judgment not paid by BNSF. Affirmed.

_____

**LAURA DENVIR STITH, JUDGE**

All concur.

21