J-A01020-16

2016 PA Super 79

| | |
|---|---|
| LARRY LIBERATORE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MONONGAHELA RAILWAY COMPANY, AND AMERICAN PREMIER UNDERWRITERS, INC., FORMERLY KNOWN AS PENN CENTRAL CORPORATION, INDIVIDUALLY AND/OR AS SUCCESS-IN-INTEREST OR LIABILITY TO PENN CENTRAL TRANSPORTATION COMPANY, PENN CENTRAL COMPANY, THE PENNSYLVANIA NEW YORK CENTRAL RAILROAD COMPANY, AND/OR THE PENNSYLVANIA RAILROAD AND CONSOLIDATED RAIL CORPORATION, AND NORFOLK SOUTHERN RAILWAY COMPANY | |
| Appellants | No. 1011 EDA 2015 |

Appeal from the Order February 25, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): No. 02075

BEFORE:  LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

OPINION BY OTT, J.:                                    **FILED APRIL 07, 2016**

Consolidated Rail Corporation and Norfolk Southern Railway Company,

(collectively "Railroad"), appeal from the judgment of $87,500.00, entered

on February 25, 2015, in the Philadelphia County Court of Common Pleas, in

_____

* Former Justice specially assigned to the Superior Court.

favor of plaintiff, Larry Liberatore, in an action to recover personal injury damages pursuant to the Federal Employers' Liability Act ("FELA").[1] On appeal, Railroad argues the trial court erred in granting Liberatore's motion to enforce full satisfaction of the verdict, thereby precluding it from deducting Liberatore's share of Railroad Retirement Tax Act ("RRTA")[2] taxes, as well as sick benefits Liberatore had received through the Railroad Retirement Board ("RRB"),[3] and a collectively-bargained supplemental sickness plan, from the jury award.[4] Railroad also challenges the court's preliminary determination that its issues are waived because they were not raised in a post-trial motion. For the reasons that follow, we vacate the judgment entered in favor of Liberatore, and remand for further proceedings.

The factual and procedural history underlying this appeal are aptly summarized by the trial court as follows:

_____

[1] 45 U.S.C. § 51 *et seq*.

[2] 26 U.S.C. § 3201 *et seq*.

[3] 45 U.S.C. § 231f.

[4] We note that both the United States of America (Department of Justice, Tax Division) and the Association of American Railroads have filed *amicus curiae* briefs on appeal in support of Railroad's contention that it was required to deduct the aforementioned taxes and benefit payments from Liberatore's jury award. **See** *Amicus Curie* Brief of United States of America; *Amicus Curie* Brief of Association of American Railroads.

On May 22, 2013 Plaintiff Larry Liberatore [] filed a complaint for negligence against Defendants American Premier Underwriters, Inc., Monongahela Railway Company, Consolidated Rail Corporation, and Norfolk Southern Corporation pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq., alleging that he developed injuries to his right shoulder during the course and scope of his employment with Defendants. On May 13, 2014, the parties stipulated to substitute Norfolk Southern Railway Company for Norfolk Southern Corporation Defendant. On May 13, 2014, the parties also stipulated to dismiss American Premier Underwriters, Inc. from the lawsuit. Therefore, Consolidated Rail Corporation and Norfolk Southern Railway Company were the two remaining Defendants that went to trial. The jury was instructed to attribute any negligence on Monongahela Railway Company's behalf to Consolidated Rail Corporation.

A jury trial began for this matter on October 24, 2014. On November 7, 2014, the jury reached its verdict, awarding [Liberatore] damages in the amount of $175,000 and finding Consolidated Rail Corporation to be 25% negligent, Norfolk Southern Railway Company to be 25% negligent, and [Liberatore] to be 50% negligent. On November 11, 2014, the Court issued a trial worksheet stating "Jury Verdict for Plaintiff" and that that the total amount awarded to [Liberatore] was $87,500.00.

On November 17, 2014, pursuant to Section 53 of the FELA[2], Defendants Consolidated Rail Corporation and Norfolk Southern Railway Company (hereinafter "[Railroad]") filed a post-trial Motion to Mold the Verdict. On November 19, 2014, this Court granted that Motion and molded the verdict to reflect a verdict of $87,500 to be awarded to [Liberatore].

_____

[2] Section 53 of the FELA states that the fact that an employee is guilty of contributory negligence shall not bar recovery, but that the damages shall be diminished in proportion to the amount of the employee's negligence. 45 U.S.C. § 53.

_____

On January 27, 2015, [Liberatore] filed a Motion to Enforce Full Satisfaction of Verdict and Judgment which stated that

[Railroad] had arbitrarily decided to reduce the molded verdict amount by the additional tax and lien amounts. [Liberatore] also stated that the deductions denied [him] the "opportunity to negotiate and/or reduce those purported liens." That motion contained a scanned letter from [Railroad] that stated the following:

Enclosed please find our drafts in the total amount of $52,172.65, calculated as follows:

| | |
|---|---|
| Net Verdict Amount | $87,500.00 |
| Plus Interest thru 12/23/14 | $647.25 |
| Less SSB[5] Lien | ($17,320.50) |
| Less RRB Lien | ($8,132.35) |
| Less RRB Taxes | ($10,521.75) |
| Net Draft Amount | $52,172.65 |

This constitutes full and final satisfaction of the verdict in case number 120502075, filed in the Philadelphia Court of Common Pleas on May 22, 2013.

This Court granted said Motion on January 28, 2015.

On February 11, 2015, [Liberatore] filed a Motion to Hold [Railroad] in Contempt for its Refusal to Obey This Court's January 28, 2015 Order. Among the relief requested, [Liberatore] asked the Court to order [Railroad] to pay the difference between $87,500.00 and $52,172.65, or $35,327.35.

On February 13, 2015, [Railroad] filed a Motion for Reconsideration of the Court's January 28, 2015 Order. On February 19, 2015, the Court denied this Motion as untimely.

The morning of February 23, 2015, [Railroad] [f]iled a Notice of Appeal appealing this Court's January 28, 2015 Order. Later that day, this Court held a hearing on [Liberatore's] Motion to Hold [Railroad] in Contempt on February 23, 2015. From the bench, this Court granted the Motion and issued an Order that ordered [Railroad] to pay: (1) $35,327.35 within three days of the Court's Order; (2) reasonable attorney's fees associated with said Motion; (3) cost for filing the Motion; (4) sanctions at the

_____

[5] The SSB Lien pertained to payments Liberatore received pursuant to the parties' collectively bargained Supplemental Sickness Benefits ("SSB") Plan.

rate of $1,000 per day after the three-day grace period after the Court's order for payment of $35,327.35.

On February 25, 2015, [Railroad] filed a Praecipe to Enter Judgment. On February 25, 2015, the Prothonotary entered judgment which stated "Judgment is entered in favor of Larry R. Liberatore and against Norfolk Southern Corporation, Monongahela Railway Corporation and Consolidated Rail Corporation on the amount of $87,500.00 on the Court Order dated 01/28/2015."

On February 26, 2015, [Liberatore] filed a Motion for Award of Attorney's Fees. On March 4, 2015, this Court granted the Motion, ordering [Railroad] to pay attorney's fees in the amount of $2,550 and costs in the amount of $28 within 20 days of the Order.

On February 27, 2015, [Railroad] paid $35,327.35 plus twenty percent interest, for a total of $42,392.82 to the Office of Judicial Records in compliance with this Court's February 23, 2015 Order. [Railroad] therefore avoided the imposition of the $1,000.00 per day sanction for failure to timely deposit the aforementioned funds with the Court.

Also on February 27, 2015, [Railroad] filed a Motion to Amend Judgment Entered on February 25, 2015. [Railroad] stated that the docket should be revised to reflect that a verdict was only entered against Norfolk Southern Railway Company and Consolidated Rail Corporation.

On March 27, 2015, [Railroad] filed a second Notice of Appeal, appealing the judgment entered by the Prothonotary on February 25, 2015.

On April 6, 2015, this Court denied [Railroad's] Motion to Amend Judgment Entered on February 25, 2015.

On April 15, 2015, [Railroad] filed a third Notice of Appeal, appealing this Court's April 6, 2015 Order.

Trial Court Opinion, 5/12/2015, at 2-5 (internal citations omitted).[6, 7]

_____

[6] Preliminarily, we note Railroad filed three separate notices of appeal in this case. The first, filed on February 23, 2015, was from the January 28, 2015,

*(Footnote Continued Next Page)*

- 5 -

In its first issue, Railroad addresses the trial court's determination that it failed to preserve any claims for review on appeal. Specifically, the court found that, pursuant to Pa.R.C.P. 227.1, Railroad was required to file a post-trial motion, within 10 days of the verdict, to "present the manner in which

_(Footnote Continued)_ _____

order of the trial court granting Liberatore's motion to enforce full satisfaction of the verdict. On April 17, 2015, this Court quashed that appeal as premature because it was filed before the entry of judgment. The second notice of appeal, filed on March 27, 2015, was from the entry of judgment on February 25, 2015, and is the one before this panel. The third notice of appeal, filed on April 15, 2015, was from the April 6, 2015, order of the trial court denying Railroad's motion to amend the judgment. That appeal was discontinued after the trial court amended the judgment to reflect the correct parties on May 12, 2015.

We reject the assertion by both the trial court and Liberatore that this appeal may be untimely because it was not filed within 30 days of the court's November 19, 2014, molded verdict. **See** Trial Court Opinion, 5/12/2015, at 10; Liberatore's Brief at 11. This Court has held "the proper, procedural course to pursue in perfecting an appeal from an adverse jury verdict is to reduce the verdict to judgment and take an appeal therefrom[.]" **Crosby v. Com., Dep't of Transp.**, 548 A.2d 281, 283 (Pa. Super. 1988), _appeal denied_, 559 A.2d 37 (Pa. 1989). **See also Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) ("Because the entry of judgment was considered to be a prerequisite to the exercise of this Court's jurisdiction, it was long this Court's policy to quash an appeal from an order upon which judgment had not been entered."). When Railroad attempted to appeal the order entered January 28, 2015, granting Liberatore's motion to enforce full satisfaction of the verdict, this Court quashed the appeal as premature since a final judgment had not been entered on the docket. **See** Docket No. 627 EDA 2015, Order, 4/17/2015. Accordingly, the appeal at issue, filed within 30 days of the court's entry of judgment on the docket, was proper.

[7] On March 11, 2015, the trial court ordered Railroad to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Railroad complied with the court's directive, and filed a concise statement on April 1, 2015.

[it] intended to distribute the funds." Trial Court Opinion, 5/12/2015, at 9. Because Railroad failed to do so, the court concluded Liberatore "was not given a chance to respond and/or dispute the proposed distribution." *Id.* Accordingly, the court determined Railroad's claims were waived.

Conversely, Railroad asserts it was not required to file post-trial motions. First, it emphasizes that post-trial motions are necessary to permit a trial court to correct errors it made at trial. Here, however, the issues arose for the first time in a post-trial context, when Railroad paid the adjusted award, and the trial court granted Liberatore's motion to enforce the full judgment. *See* Railroad's Brief at 13-14. Second, Railroad claims it was not required to seek the trial court's approval to deduct RRTA taxes and previously-paid sick benefits from the jury award because it was legally required to deduct those amounts and "no court permission is needed to perform a legally-required act." *Id.* at 15.

We agree with Railroad's contention that it was not required to file a post-trial motion seeking the trial court's permission to deduct the RRTA taxes, the RRB lien and the supplementary sick benefits from Liberatore's FELA award. As we will discuss *infra*, Railroad was legally required to deduct these amounts from the judgment, and, consequently, it was not obligated to seek the trial court's permission to do so.

Moreover, Railroad was not required to file post-trial motions to challenge a court ruling that occurred after trial. Railroad is not disputing either the jury's award to Liberatore or its finding of liability, but rather,

contests the trial court's grant of Liberatore's **post-trial motion** to enforce the judgment – an issue that did not arise until **after** trial. **See Atwell v. Beckwith Machinery Co.**, 872 A.2d 1216, 1220 (Pa. Super. 2005) (finding appellant's challenge of trial court order entered on December 22, 2003, which struck a judgment entered on December 1, 2003, was not waived based upon appellant's failure to file timely post-trial motions as appellant "could not possibly have entered a post-trial motion challenging this issue within 10 days of the February 2003 verdict."). Indeed, the note to Pennsylvania Rule of Civil Procedure 227.1 provides:

> A motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or **other proceedings which do not constitute a trial**.

Pa.R.C.P. 227.1 (emphasis supplied).

This Court's recent *en banc* decision in **Vautar v. First National Bank of Pennsylvania**, ___ A.3d ___, 2016 PA Super 5 (Pa. Super. 2016) (*en banc*), is instructive. In that case, Jean Sojak held two certificates of deposit ("CD's") in trust for her sisters Frances Sakmar and Bertha Vauatar. Sakmar later mistakenly believed that Sojak had retitled the CD's in trust for her alone. When Sojak died, Sakmar attempted to redeem the CD's; however, because they were not in her possession, the bank required her to sign indemnity bonds, in which she represented she was entitled to the proceeds. The bank then released the proceeds to her. **Id.** at *1.

- 8 -

Vautar later filed a civil action against the bank, demanding it pay her half of the proceeds from the CD's. The bank, in turn, demanded reimbursement from Sakmar who declined to pay the disputed funds. Rather, the funds were placed in an Oppenheimer account and, upon Sakmar's death, distributed to the appellants, her beneficiaries. The bank filed a third-party complaint seeking to join Sakmar in Vautar's action. When Sakmar died, her estate was substituted as a party. The Bank later filed an amended third-party complaint to join the appellants, asserting their liability under a claim of, *inter alia*, unjust enrichment. ***See id.***

The case proceeded to a non-jury trial, and, on September 5, 2013, the court entered a verdict and award for the bank and against the estate. The bank filed a post-trial motion arguing that the court should have also imposed a "constructive trust on the funds held by the [a]ppellants." ***Id.*** at *2. Without taking any additional evidence or testimony, the court entered an "Amended/Supplemental" verdict on December 16, 2013, "finding against both [the] estate and the [a]ppellants and concluding that [the a]ppellants were unjustly enriched by their receipt of the Disputed Funds." ***Id.*** The appellants thereafter filed a timely appeal.

On appeal, the bank argued the appellants' claims were waived because they failed to file a timely post-trial motion after the court's entry of the "amended/supplemental verdict." ***Id.*** An *en banc* panel of this Court disagreed. Rather, we determined the appellants were not required to file post-trial motions to the court's "amended/supplemental verdict" because

- 9 -

the post-trial proceedings that preceded its entry "clearly did not 'amount to a trial'" as contemplated in Pa.R.C.P. 227.1. *Id.* at *4 (emphasis omitted). The *en banc* panel also noted the issues the appellants raised on appeal were the same ones argued on the bank's post-trial motions, such that requiring the appellants to file post-trial motions would have been a "waste of judicial resources." *Id.*

While we recognize the issues involved in the present case, unlike those in *Vautar*, were not addressed by the trial court prior to appeal, we find the court had no authority to excuse Railroad from deducting from the jury's award either Liberatore's share of RRTA taxes, or the RRB and supplemental sickness benefits he had received. Accordingly, Railroad's claims are not barred by its failure to file post-trial motions, and we may now turn to the substantive matters on appeal.

Railroad next contends the trial court erred in determining it was not permitted to deduct from the jury award Liberatore's share of RRTA taxes. Its argument is two-fold. First, Railroad asserts an award for time lost due to personal injury is taxable "compensation" under the RRTA and Railroad Retirement Act ("RRA").[8] Second, Railroad claims because Liberatore sought damages for lost time and the jury's award was not apportioned, the entire FELA verdict should be treated as "lost time" pay for RRTA tax purposes.

---

[8] 45 U.S.C. § 231 *et seq*.

- 10 -

This issue involves the interplay between the RRA, the RRTA, the Internal Revenue Code (IRC),[9] and the Federal Insurance Contributions Act ("FICA").[10] By way of background, "[t]he [RRA], first passed in 1934, provides a system of retirement and disability benefits for persons who pursue careers in the railroad industry." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573 (1979) (internal citation omitted). For that reason, railroad workers do not receive social security benefits, but rather, retirement benefits under the RRA. *Heckman v. Burlington Northern Santa Fe Railway Co.*, 837 N.W.2d 532 (Neb. 2013).[11]

> The RRTA is a subsection of the Internal Revenue Code (IRC). Retirement benefits paid through the RRA are funded through the RRTA. Under the RRTA, taxes are imposed on compensation earned by railroad employees. The RRTA implements a dual tax system, in which railroad employers must withhold their tax shares, as well as their employees' tax shares, and then provide both shares to the Internal Revenue Service (IRS). The first part of this dual system is "Tier 1." Tier 1 taxes are imposed against both railroad employee and railroad employer. They are analogous to taxes imposed on nonrailroad workers by the Federal Insurance Contributions Act (FICA). The second part of

---

[9] United States Code, Title 26.

[10] 26 U.S.C. § 3101 *et seq*.

[11] We recognize "this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts." *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1207 (Pa.Super. 2011). Nevertheless, "we may consider these cases for their persuasive value" particularly where, as here, there is no Pennsylvania case law addressing the claims on appeal. *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 60 n.4 (Pa. Super. 2015), *appeal denied*, 116 A.3d 605 (Pa. 2015).

the dual system, "Tier 2," also imposes taxes against both railroad employee and railroad employer. "[Tier 2] benefits are similar to those that workers would receive from a private multi-employer pension fund." RRTA taxes also include certain Medicare withholdings.

***Cowden v. BNSF Ry. Co.***, 2014 WL 3096867, *2 (E.D. Mo. 2014) (internal citations omitted).

At issue here is whether a FELA award, which includes a claim for time lost due to personal injury, is taxable under the RRTA. The RRTA directs railroad employers to deduct retirement taxes "from the compensation of the employee as and when paid." 26 U.S.C. § 3202(a). The Act defines "compensation" simply as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1). Although in prior versions of the Act, the definition of "compensation" specifically included pay for time lost due to personal injury, "Congress deleted the … language from the RRTA in 1983 as part of an overhaul to both the RRA and the RRTA." ***Phillips v. Chicago Cent. & Pacific R. Co.***, 853 N.W.2d 636, 641 (Iowa 2014).

However, the definition of "compensation" in the RRA specifically includes pay for time lost due to personal injury:

(h)(1) The term "compensation" means any form of money remuneration paid to an individual for services rendered as an employee to one or more employers or as an employee representative, **including remuneration paid for time lost as an employee**, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost. …

(2) An employee shall be deemed to be paid "for time lost" the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer,

- 12 -

**including absence on account of personal injury**, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation. **If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.**

45 U.S.C. § 231(h)(1)-(2) (emphasis supplied).

By comparison, the social security equivalent of the RRTA is FICA. FICA imposes "a tax equal to 6.2 percent of the wages … received by the individual with respect to employment" on an individual's income. 26 U.S.C. § 3101(a). The term "wages" in FICA is defined, similarly to "compensation" under the RRTA, as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash[.]" 26 U.S.C. § 3121(a)(1). However, the IRC, which is the umbrella statute under which both the RRTA and FICA are codified, specifically **excludes** from its definition of "gross income" "the amount of any damages … received … on account of personal physical injuries or physical sickness[.]" 26 U.S.C. § 104(a)(2). Because the definition of "wages" under FICA is narrower than the definition of "gross income" under the IRC, several Circuit Courts of Appeal have held that "[d]amages not included in the [IRC's] definition of 'income' are not considered 'wages'" for purposes of FICA. **Gerbec v. United States**, 164 F.3d 1015, 1025 (6th Cir. 1999), *quoting* **Dotson v. United States**, 87 F.3d 682, 689 (5th Cir. 1996). **See also**

*Redfield v. Ins. Co. of N. Am.*, 940 F.2d 542, 548 (9th Cir. 1991) ("Personal injury damages are simply not 'income' as used in the FICA statutes.").

Relying upon the decision of the Missouri Supreme Court in *Mickey v. BNSF Railway Company*, 437 S.W.3d 207 (Mo. 2014), the trial court *sub judice* found Liberatore's "judgment is not subject to RRTA withholding taxes 'both because the RRTA does not make lost wages received on account of a FELA personal injury suit subject to RRTA taxes and because there is no basis for a presumption that part of the award was for lost wages or that any loss in earning capacity precluded him from taking jobs that would not have been subject to RRTA taxes.'" Trial Court Opinion, 5/12/2015, at 14, *quoting* *Mickey*, *supra*, 437 S.W.3d at 218. In doing so, the trial court rejected decisions of the Supreme Courts of Nebraska and Iowa, which held an employee's entire FELA award is subject to RRTA taxes when the plaintiff has made a claim for lost wages and the jury returned a general verdict. *See Heckman*, *supra*; *Phillips*, *supra*.

A brief synopsis of the cases relied upon by the trial court and the parties will be helpful to our discussion. In *Heckman*, *Phillips*, and *Mickey*, the plaintiffs sued their railroad employers for workplace injuries under FELA, which included a claim for "lost wages." Moreover, in all three cases, the jury returned a general verdict, that did not allocate damages, and the railroad employers withheld a portion of the damages award for

RRTA taxes. *See Heckman*, *supra*, 837 N.W.2d at 535; *Phillips*, *supra*, 853 N.W.2d at 638; *Mickey*, *supra*, 437 S.W.3d at 208.

In *Heckman*, the Nebraska Supreme Court held that the plaintiff's entire, general FELA award was subject to RRTA taxation. The Court first considered the preliminary question of whether any portion of the jury's general verdict could be considered "lost wages," and, consequently, taxable under the RRTA. *Heckman*, *supra*, 837 N.W.2d at 536. Relying upon state law, the Court found that when a verdict does not "specify the basis for an award," it is presumed "the winning party prevailed on all issues presented to the jury." *Id.* at 537. Because the pleadings and jury instructions included a claim for lost wages, the *Heckman* Court held that the jury presumptively found for the plaintiff on that claim. *Id.* at 538.

Next, the *Heckman* Court considered whether the plaintiff's "lost wages" award was taxable "compensation" under the RRTA. The Court looked to the definition of compensation in the RRA, which explicitly includes "remuneration for time lost" as compensation. *Id.* at 539, *citing* 45 U.S.C. 231(h)(1). Further, the Court indicated the RRA also provides that when an employee receives a personal injury award that includes "time lost" pay, the total award is "deemed to be paid for time lost unless" it is specifically apportioned. *Id.* at 539-540, *citing* 45 U.S.C. § 231(h)(1)-(2). Moreover, the Court noted that Treasury Regulation § 31.3231(e)-1 interpreted the RRTA's definition of "compensation" to include "amounts paid for an identifiable period during which the employee is absent from active service

- 15 -

of the employer" and, specifically, "pay for time lost." *Id.* at 540, *quoting* 26 C.F.R. § 31.3231(e)-1(a)(3), (4). The **Heckman** Court concluded: "Based on the definition of compensation as stated in the RRA and RRTA and the agencies' interpretations found in federal regulations, we conclude that time lost is compensation that is subject to taxation." *Id.*

Lastly, the Court looked to opinions of the RRB for guidance in determining what portion of the general verdict was subject to RRTA taxation. In those decisions, the RRB treated the entire FELA award for personal injury as pay for time lost, absent a specific allocation. *Id.* Accordingly, the **Heckman** Court held:

> Because the jury returned a general verdict that was based in part on [plaintiff's] lost wages, we presume that he prevailed on all issues presented to the jury and that [plaintiff] was awarded lost wages. The district court failed to recognize that absent specific allocations to other components, the award is deemed compensation for lost wages. See, 45 U.S.C. § 231(h)(2); RRB Legal Opinions L–87–91 and L–92–18. Classification of the award as compensation affects both [plaintiff] and [railroad] because it triggers obligations and benefits of both parties under the RRA. [Railroad] is required to pay tiers 1 and 2 taxes, and [plaintiff] receives retirement benefits for the amount of time he was absent due to his personal injury.

*Id.* at 542.

The Supreme Court of Iowa came to the same conclusion in **Phillips**. In that case, the court first found that under either federal or state law, the entire FELA verdict would be considered payment for time lost. **Phillips**, *supra*, 853 N.W.2d at 644. Although recognizing the RRTA does not explicitly include "time lost" pay in its definition of compensation, the court,

nonetheless, noted the RRA "expressly provides" so, and "there is no logical reason to conclude that such silence [in the RRTA] is an indication Congress intended a different rule to apply for purposes of tax withholding under the RRTA." *Id.*

Next, the **Phillips** Court considered whether "remuneration for time lost is subject to tax withholding under the RRTA." *Id.* at 645. In doing so, the court again noted that while the RRA explicitly includes "time lost" pay in its definition of "compensation," the RRTA does not. Moreover, the Court pointed out prior versions of the RRTA did include pay for time lost in its definition but the language was omitted in subsequent amendments to the statute. *Id.* at 640-641. Regardless, the **Phillips** Court explained that, in 1994, after those amendments were enacted, the IRS issued Treasury Regulations "that provided the definition of compensation under the RRTA included pay for time lost." *Id.* at 642, *citing* 26 C.F.R. § 31.3231(e)-1. The Court emphasized the commentary accompanying the Regulations expressly stated that, despite the omission of "time lost" language in the amendments to the Act, "[t]he legislative history does not indicate that Congress intended to exclude payments for time lost from compensation." *Id.* at 642, *quoting* Update of Railroad Retirement Tax Act Regulations, 59

FR 66188-01 (12/24/1994).[12]  Consequently, the **Phillips** Court held that "time lost is properly taxed as compensation under the RRTA." **Id.** at 652.

However, in **Mickey**, the decision relied upon by the trial court herein, the Supreme Court of Missouri held that the employee's general FELA award was not subject to RRTA taxation.  In that case, like here, after the railroad employer deducted RRTA taxes from the employee's FELA award, the trial court ordered the railroad to satisfy the judgment.  In an appeal by the railroad, the **Mickey** court affirmed the trial court's ruling.

First, the **Mickey** Court determined that a FELA judgment is not taxable "compensation" pursuant to the RRTA.  The court explained the definition of "gross income" **under the IRC** specifically excludes "'the amount of any damages … received … on account of personal physical

_____

[12] Before relying upon Treasury Regulations, the **Phillips** Court recognized that the United States Supreme Court provided guidelines as to when a court may defer to an administrative agency's interpretation of a statute.  **See Chevron, U.S.A., Inc. v. National Res. Defense Council, Inc.**, 467 U.S. 837, 842-843 (1984) (holding deference is appropriate when (1) "the statute is silent or ambiguous with respect to the specific issue" and (2) "the agency's answer is based on a permissible construction of the statute.").

In following the **Chevron** guidelines, the **Phillips** Court determined the Treasury Regulations at issue were entitled to deference.  First, the court found that Congress's intent, in omitting a reference to "time lost" was not clear, particularly since the RRA "explicitly includes time lost in its definition of compensation," and "[t]he RRA and the RRTA are inextricably interconnected because the latter funds the former." **Phillips**, **supra**, 853 N.W.2d at 649.  Next, the court concluded the Treasury Department's interpretation of the Act was reasonable, and supported by decisions of the RRB. **Id.** at 651.

injuries or physical sickness[.]'" ***Mickey***, ***supra***, 437 S.W.3d at 210, *quoting* 26 U.S.C. § 104(a)(2). Likewise, personal injury judgments "are not subject to [FICA] withholding taxes, which fund Social Security and Medicare benefits and closely parallel RRTA withholding taxes." ***Id.*** at 211 (footnote omitted). The ***Mickey*** Court noted the Treasury Regulation interpreting the RRTA's definition of compensation specifically states it "has the same meaning as the term wages in [FICA] section 3121(a) … except as specifically limited by the [RRTA]." ***Id.*** at 212, *quoting* 26 C.F.R. § 31.3231(e)-1(a)(1) (emphasis omitted). Because the Court found no "specific limitation in the RRTA," it explained:

> It necessarily follows that "compensation" received as a part of a personal injury judgment is not subject to RRTA withholding taxes for the same reason that lost wages received as part of a personal injury judgment are not subject to FICA withholding taxes. [A] payment for lost wages is normally subject to FICA withholding taxes, but where such payment is on account of a personal injury suit or settlement, it is not. This is because the lost wages damages award is excluded from income under section 104(a)(2) of the [IRC], and a payment that does not qualify as income cannot qualify as wages. Consequently, such a payment is not subject to FICA's taxes on "wages." Likewise, lost wages obtained through a personal injury suit are not taxed under the RRTA because they do not constitute income and, therefore, do not qualify as taxable "compensation" under the RRTA.

***Id.*** at 212. In other words, the ***Mickey*** Court applied the personal injury award exemption for "gross income" under the IRC to both FICA and RRTA withholding taxes.

Further, the *Mickey* Court found the decision in *Phillips* "unpersuasive." *Id.* at 213. Contrary to that decision, the *Mickey* Court concluded there were "many reasons why the term 'compensation' has a different meaning under the RRTA than it has under the RRA." *Id.* First, the court explained damages for "time lost" are treated differently when the time lost is due to personal injury. Indeed, the Regulation upon which *Phillips* relied refers only to "pay for time lost." *Id.* Second, the *Mickey* Court noted that under state law, a plaintiff seeking lost wages due to personal injury is actually seeking "the loss of the capacity to earn," and it would be "speculative to presume that any future lost earnings necessarily would have been" in the railroad industry and subject to RRTA taxes. *Id.* at 214. Finally, the Court opined the *Phillips* decision paid "insufficient attention to the different purposes of the RRA and the RRTA[,]" explaining:

> Although the RRA and the RRTA overlap to the extent that taxes collected under the RRTA fund benefits provided under the RRA, they differ in significant ways. Most basically, the acts are administered by separate agencies: the RRTA is part of the Internal Revenue Code and is administered by the Internal Revenue Service of the Department of the Treasury, while the RRA is administered by the Railroad Retirement Board, which is an independent agency in the executive branch. And, the RRA is a remedial act that provides benefits to railroad workers, while the RRTA is a tax act.

*Id.* at 214-215 (internal citations omitted). For that reason, the *Mickey* Court found the inclusion of time lost due to personal injury as compensation in the RRA, but not in the RRTA, makes sense because the RRA's purpose is remedial, that is, "is to help workers qualify for RRA benefits." *Id.* at 215.

Accordingly, the Court concluded: "These foundational distinctions confirm that section 231(h) of the RRA does not determine the scope of taxable compensation under the RRTA." *Id.* (footnote omitted).

The *Mickey* Court also cited an alternative basis for its decision. Namely, the railroad could not presume the entirety of the jury's general verdict was subject to RRTA taxes. *Id.* at 216. The Court noted that, under Missouri law, "a general verdict is not necessarily presumed to constitute a finding on all issues, for [Missouri Supreme Court Rule 71.01] says it may be a pronouncement 'upon all *or any*' of the issues presented." *Id.* at 217 (emphasis in original). Therefore, the *Mickey* Court held:

> Mr. Mickey's judgment is not subject to RRTA withholding taxes both because the RRTA does not make lost wages received on account of a FELA personal injury suit subject to RRTA taxes and because there is no basis for a presumption that part of the award was for lost wages or that any loss in earning capacity precluded him from taking jobs that would not have been subject to RRTA taxes.

*Id.* at 218.

As noted above, the trial court in the present case relied exclusively upon *Mickey* in determining Liberatore's general FELA verdict was not subject to RRTA taxes. The court found the *Mickey* decision drew "an appropriate parallel" between FICA, which funds Social Security, and the RRTA, which funds the RRA. Trial Court Opinion, 5/12/2015, at 13. The court determined that because a personal injury award is excluded from the definition of "gross income" under the IRC, it is also not taxable for social security benefits under FICA. *Id.* Under the trial court's analysis, it

- 21 -

therefore follows the award is not subject to RRTA taxes, as well. The trial court concluded the contrary reasoning in **Heckman** and **Phillips** was "unpersuasive." **Id.** at 14.

Railroad contends, however, the RRTA and the RRA "are the flip-sides of a single comprehensive program[;]" they should be considered "*in pari materia*, and [] the RRTA's definition of 'compensation' must be interpreted consistently with the RRA's definition of that same term." Railroad's Brief at 25. We agree.[13]

As set forth above, both FICA and the RRTA are taxing statutes, and are codified in the IRC. Neither specifically excludes personal injury awards from its definition of taxable income. **See** 26 U.S.C. § 3121(a)(1) (defining "wages" under FICA); 26 Pa.C.S. § 3123(e)(1) (defining "compensation" under the RRTA). However, the IRC excepts personal injury awards from its definition of "gross income,"[14] and some federal courts have held that this exclusion also applies when determining an individual's "wages" for purposes of calculating FICA taxes. **See Redfield**, **supra**. Under the reasoning of **Mickey**, the IRC's exclusion applies, as well, to the taxable "compensation"

_____

[13] "Because [the issues on appeal] are purely legal ones involving statutory interpretation, we exercise a *de novo* standard of review and a plenary scope of review of the [trial court's] decision." **Bowling v. Office of Open Records**, 75 A.3d 453, 466 (Pa. 2013) (citation omitted).

[14] **See** 26 U.S.C. § 104(a)(2). We note that this definition is under the subtitle for "Income Taxes."

of a railroad worker for purposes of the RRTA. *See Mickey*, *supra*, 437 S.W.3d at 212 ("[L]ost wages obtained through a personal injury suit are not taxed under the RRTA because they do not constitute income …").

However, the RRA specifically **includes** payment for time lost "on account of personal injury" in its definition of "compensation" for purposes of calculating RRA benefits. Although the *Mickey* Court attempted to disassociate the RRA and RRTA, we find the statutes are inextricably intertwined, and must be considered *in pari materia*. Indeed, without the benefits provided for in the RRA, there would be no need for the taxing provisions of the RRTA. *See Phillips*, *supra*, 853 N.W.2d at 649 (noting one court described the RRA "as 'the expenditure side of the coin' and the RRTA 'the revenue side[.]'").

Moreover, as the *Mickey* Court acknowledged, the Treasury Regulations provide some guidance in this matter.[15] The Regulation

---

[15] We agree with, and rely upon, the discussion of the *Phillips* Court regarding the deference due to a Treasury Regulation that passes the test set forth by the Supreme Court in *Chevron*. *See Phillips*, *supra*, 853 N.W.2d at 647-650. *See also supra* at 17-18. Indeed, in a recent decision, the Federal District Court for the Eastern District of Missouri also found the regulation at issue "withstands scrutiny under *Chevron*" and was entitled to deferential authority. *Cowden*, *supra*, 2014 WL 3096867 at *6. Nevertheless, that court ultimately concluded the lost time on account of personal injury was excluded from RRTA taxes pursuant to the IRC's exemption, and the plaintiff's general verdict was "excluded in its entirety." *Id.* at *10-11.

interpreting the RRTA's definition of "compensation" provides, in relevant part:

> **(a) Definition—(1)** The term compensation has the same meaning as the term wages in section 3121(a), … except as specifically limited by the Railroad Retirement Tax Act (chapter 22 of the Internal Revenue Code) or regulation. …
>
> \* \* \* \*
>
> **(4)** Compensation includes amounts paid to an employee for loss of earnings during an identifiable period as the result of the displacement of the employee to a less remunerative position or occupation **as well as pay for time lost**.

26 C.F.R. § 31.3231(e)-1 (emphasis supplied). The **Mickey** Court found that because neither the Regulation nor the RRTA specifically include pay for time lost **due to personal injury** in its definition of compensation, the FICA definition of "wages" controlled. **Mickey**, **supra**, 437 S.W.3d at 212. Accordingly, the Court held lost wages recovered in a personal injury award are not taxable "compensation."

However, what the **Mickey** Court, and the trial court herein, failed to consider, is the difference in the way in which the RRA and the Social Security Act ("SSA") treat lost wages awarded in a personal injury suit. Under the RRA, a railroad employee receives an **increase** in benefits based upon his "average monthly compensation." 45 U.S.C. § 231b(b)(1). That "compensation" includes pay for time lost "on account of personal injury." 45 U.S.C. § 231(h)(2). Because an employee's RRA benefits increase based upon "time lost" pay in a personal injury award, it follows that the same "time lost" award should be taxed under RRTA to pay for those benefits.

The Department of Justice, Tax Division, in its *amicus* brief explained the relationship between the two statutes as follows:

> The RRA and the RRTA work in concert to provide retirement benefits for railroad workers. Under the RRA, when an employee receives compensation, the amount thereof adds to his creditable service and affects the level of benefits to which he will be entitled when he retires. The RRTA imposes a tax on the compensation paid to railroad employees in order to fund the benefits they will later receive. Both statutes, therefore, use the same definition of "compensation" to ensure that there is sufficient funding to pay the benefits that will later be owed.

United States of America's *Amicus* Brief at 4.

Conversely, the SSA does not explicitly include an employee's pay for lost time due to personal injury when calculating benefits. **See** 45 U.S.C. §§ 409, 415. Therefore, it follows that for purposes of collecting SSA taxes, FICA also does not tax an award for time lost due to personal injury.

Furthermore, we note the IRS has issued a Revenue Ruling[16] on this subject, which comports with our interpretation of the statutes. In Revenue Ruling 61-1, a railroad employee received an award under a settlement agreement for personal injuries he sustained while employed by the railroad. **See** Rev. Rul. 61-1, 1961-1 C.B. (1961), at *1. He elected to apportion a part of that settlement for time lost "for the purpose of computing railroad

---

[16] "A revenue ruling is an official interpretation by the Service of the Internal Revenue Code, related statutes, tax treaties, and regulations. It is the conclusion of the Service on how the law is applied to a specific set of facts." www.irs.gov/irm/part32/irm_32-002-002.html (IRS Manual at 32.2.2.3.1, "Revenue Ruling Defined").

retirement credit." *Id.* The IRS was asked to determine the "federal income tax consequence" of his decision to apportion part of the settlement for time lost. *Id.* The IRS found:

> In the instant case, it is held that the amount received by the taxpayer was in settlement of any and all claims which he had against the railroad for the personal injuries he sustained and is, therefore, excludable from gross income under section 104(a)(2) of the Code. The fact that in this case 'time lost payments' constitute compensation for the purposes of taxes imposed by the Railroad Retirement Tax Act is not controlling for Federal income tax purposes.

*Id.* Therefore, the IRS recognized that income received for time lost due to personal injury is treated differently for income tax purposes than for RRTA taxation purposes. Although Revenue Rulings are not binding on this Court, and "do not have the force and effect of regulations," the United States Supreme Court has stated that "an agency's interpretations and practices [are to be given] considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use." *Davis v. United States*, 495 U.S. 472, 484 (1990). This ruling comports with our interpretation of the statutes, and we find it persuasive authority.[17]

_____

[17] The federal district court in *Cowden*, *supra*, downplayed the significance of this Revenue Ruling, explaining that such rulings are "not as influential as Treasury Regulations and statutes." *Cowden*, *supra*, 2014 WL 3096867, at *11. The court then summarily dismissed the decision, finding it "conflict[ed] with mandatory statutory and regulatory authority." *Id.* The *Cowden* Court, like the *Mickey* Court, relied upon the exclusion of personal

*(Footnote Continued Next Page)*

Accordingly, we conclude the trial court erred in ruling that an award for lost time due to personal injury is not taxable under the RRTA. However, that finding only resolves the first part of this claim. As noted *supra*, the jury returned a general verdict, rendering it impossible to determine what portion of the award was for lost wages. Railroad asserts that we must presume the jury found for Liberatore on all issues, including the claim for lost wages. Railroad's Brief at 42-45. Moreover, because the RRA specifically provides that a personal injury award is deemed to be for time lost unless the award is specifically apportioned, Railroad argues Liberatore's general verdict, in its entirety, was taxable. *Id.* at 45-47. The trial court, however, rejected this argument, claiming there was no Pennsylvania authority to support this contention that "a general verdict presumes that the entire amount … [is] payment for time lost." Trial Court Opinion, 5/12/2015, at 11. We disagree.

Our Supreme Court has long recognized "[a] general finding for the plaintiff [is] a finding wholly against the pleas of the defendant." ***In re Fulton's Estate***, 51 Pa. 204, 211 (1866). ***See also Heitz v. Bridge***, 39 A.2d 287, 289 (Pa. Super. 1944) ("A presumption that a verdict is responsive to the issues as raised by the pleadings and the proofs, arises in support of a general verdict[.]"). As such, it was incumbent upon Liberatore

*(Footnote Continued)* ————————————

injury awards from personal income and FICA taxation to shape its analysis of the RRTA. As explained above, we disagree with that comparison.

to seek a special verdict form so that the jury's separate assignment of damages could be determined.

Interestingly, Liberatore did initially file a motion *in limine* requesting the court employ a special verdict form for this very reason. **See** Liberatore's Motion in Limine, 6/13/2014, at 18-21. Citing **Heckman**, **supra**, Liberatore acknowledged that if he obtained a general verdict, "the railroads may claim that the entire verdict should be deemed compensation for lost wages[, and at] that point any award be subject to taxation." **Id.** at 20-21. However, Railroad states Liberatore withdrew this request on the eve of trial, and asked the court to provide a general verdict form "that did not itemize specific categories of damages." Railroad's Brief at 6. Our review of the trial transcript reveals counsel for Liberatore indicated to the court that the issue regarding a special verdict form could "be deferred" and "discussed in chambers and/or decided on the papers rather than oral argument." N.T., 10/27/2014, at 12-13. The court commented it was "really an issue for the charging conference[,]" a contention with which Liberatore's counsel agreed. **Id.** at 13. Nevertheless, during oral argument before this Court, Liberatore's counsel stated he did, indeed, withdraw his request for a special verdict, because he believed the **Mickey** decision, decided only a few months before trial, was advantageous to his client. He cannot now be heard to complain when the lack of apportionment works to his detriment.

We also must briefly address Liberatore's assertion that Railroad routinely takes an inconsistent position when it settles a FELA claim. Indeed, Liberatore contends Railroad arbitrarily requires successful trial litigants to pay RRTA taxes "in an attempt to punish a plaintiff for going to trial[.]" Liberatore's Brief at 37. In support of this claim, Liberatore reproduced in his brief a purported "Settlement and Final Release" from another case in which the amount listed for RRTA taxes is "$0.00." Liberatore's Brief at 38.

This claim is specious. "Parties with possible claims may settle their differences upon such terms as are suitable to them." **Buttermore v. Aliquippa Hosp.**, 561 A.2d 733, 735 (Pa. 1989). A railroad employer could structure a settlement agreement so that none of the award was allocated for time lost pay. Therefore, the payment would not be subject to RRTA taxation, and additionally, would not count towards the employee's RRA benefits. As Railroad states in its reply brief, "there is nothing wrong or nefarious about this mutually-beneficial approach." Railroad's Reply Brief at 17. Consequently, Railroad's purported failure to deduct RRTA taxes from a settlement award in an unrelated matter, when it is unclear any of the award was for lost time, is of no moment.

Accordingly, we conclude Railroad was statutorily required to deduct RRTA taxes from Liberatore's general FELA verdict, and the trial court erred

when it directed Railroad to satisfy the entire verdict.[18]  We note Liberatore's

remedy, if he is entitled to one, lies with the IRS or in federal court.  *See*

*United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("A

taxpayer seeking a refund of taxes erroneously or unlawfully assessed or

collected may bring an action against the Government either in United

States district court or in the United States Court of Federal Claims" after

first filing a claim for a refund with the IRS). [19]

In its last issue, Railroad argues the trial court erred in preventing it

from deducting from Liberatore's award the full amount of sick benefits he

received through the RRB and a collectively bargained SSB Plan.  With

regard to the RRB lien, Railroad contends it was statutorily required to

deduct the lien amount under the Railroad Unemployment Insurance Act

_____

[18] We note neither the trial court, nor Liberatore, addresses the clear mandate in the RRA that an unapportioned personal injury verdict should be considered as all "time lost" pay.  *See* 45 U.S.C.A. § 231(h)(2) ("If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.").

[19] We also find Section 7421 of the IRC instructive.  *See* 26 U.S.C. § 7421(a).  "The object of § 7421(a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."  *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 5 (1962).  Here, the trial court improperly attempted to exercise its jurisdiction to prevent Railroad from deducting RRTA taxes from Liberatore's jury award.

("RUIA").[20] Further, with regard to the SSB Plan benefits, Railroad asserts it was required to deduct the amount based on the parties' collective bargaining agreement.

By way of background, the RUIA, through the RRB, provides unemployment and sick benefits to railroad workers. **See** 45 U.S.C. § 352(a)(1). After payments are made, the RRB obtains a lien upon any damage award the employee receives for the amount of the benefits paid. 45 U.S.C. § 362(o). **See also** 20 C.F.R. § 341.1 ("After notice in accordance with this part, the Board shall have a lien upon any sum or damages paid or payable to an employee based upon an infirmity for which the employee received sickness benefits."). Pursuant to RRB Regulations, an employer, who pays a damages award to an employee, remains liable to the RRB for the amount of the lien unless it either withholds the lien amount from the damages award and forwards it to the RRB, or includes the RRB as a payee on the damages check. 20 C.F.R. § 341.7.

Here, in addition to RRB benefits, Liberatore also received additional sickness benefits pursuant to the parties' SSB Plan, which is part of their collective bargaining agreement. The Plan benefits are administered by Aetna Life Insurance Company, and, like RRB benefits, are offset by any

---

[20] **See** 45 U.S.C. § 351 *et seq*.

damages award the employee may receive.  The Plan provides, in relevant part:

This Plan has been established and maintained in fulfillment of certain collective bargaining agreements.  The agreements contain the following provision:

"In case of a disability for which the employee may have a right of recovery against the employing railroad …, benefits will be paid under this Plan pending final resolution of the matter so that the employee will not be exclusively dependent upon his sickness benefits under the [RUIA]. However, the parties hereto do not intend that benefits under this Plan will duplicate, in whole or in part, any amount recovered for loss of wages from the employing railroad …, and they intend that benefits paid under this Plan will satisfy any right of recovery for loss of wages against the employing railroad to the extent of the benefits so paid.  Accordingly, benefits paid under this Plan will be offset against any right of recovery for loss of wages the employee may have against the employing railroad; …

Thus, if benefits are paid under this Plan, the benefits payments will be deducted from any payment made in any case involving a claim for loss of wages and in which the employer or a third party may be liable for the injury.

Railroad's Motion for Reconsideration, 2/13/2015, Exhibit O, Supplemental Sickness Benefits Plan (1/1/2010) at 18.  Relevant to this appeal, the SSB Plan also states any dispute involving the application of the plan must be submitted to a Disputes Committee.  *See id.*, Exhibit Q, Memorandum Agreement to Supplemental Sickness Benefit Agreement, at Section 2 (c).

The trial court concluded Railroad's actions violated Liberatore's due process rights.  *See* Trial Court Opinion, 5/12/2015, at 14.  The court claimed that because Railroad did not provide prior notice it intended to deduct the full amount of these benefits from the jury award, Liberatore

"was not given an opportunity to be heard, or to present an alternative argument, or to simply negotiate some of the lien amounts down to a lower amount." *Id.* at 14-15. Liberatore "piggybacks" on the trial court's due process argument, emphasizing Railroad failed to notify him that it intended to deduct the sick benefits from the jury award before it did so. Liberatore's Brief at 40. He further claims Railroad's deduction of those benefit amounts "effectively eliminated the ability of [his] counsel to attempt to obtain a reduction in the amount of any RRB lien" or the lien of the SSB plan provider. Liberatore's Brief at 42-43.

Contrary to the trial court's characterization, we find Railroad's deduction of the RRB lien and SSB benefits from the jury award did not violate Liberatore's due process rights. "The core requirements of due process are notice and the opportunity to be heard 'at a meaningful time and in a meaningful matter.'" *In re Bridgeport Fire Litig.*, 8 A.3d 1270, 1288 (Pa. Super. 2010) (citations omitted), *appeal denied*, 23 A.3d 1003 (Pa. 2011). Here, Liberatore has not lost his right to be heard on the amount of the RRB lien and SSB benefits deducted from his award. The RRB Regulations state the Board has the **exclusive authority** to "compromise an amount recoverable" under the Act. 20 C.F.R. § 340.13. Indeed, the Regulations explicitly provide: "Compromise is at all time within the discretionary authority of the Board or its designee." *Id.* Therefore, Liberatore still retains the opportunity to challenge the amount of the RRB lien before the Board. Moreover, neither the trial court, nor Railroad, had

any authority to reduce the amount of the lien. Accordingly, we find the trial court erred when it precluded Railroad from deducting the RRB lien from the jury award.

With regard to the SSB deduction, as noted above, the parties' SSB Plan provides that any payments will be deducted from a damages award. Railroad's Motion for Reconsideration, 2/13/2015, Exhibit O, Supplemental Sickness Benefits Plan (1/1/2010) at 18. Moreover, the Plan states that all disputes involving the application of the Agreement fall within the exclusive jurisdiction of a Disputes Committee. **See id.**, Exhibit Q, Memorandum Agreement to Supplemental Sickness Benefit Agreement, at Section 2(c). Again, neither the trial court nor Railroad had the authority to forgive or compromise any part of the SSB benefits owed. However, Liberatore may still challenge the amount of the deduction before the Disputes Committee. Accordingly, we find Liberatore's due process rights were not violated because he was aware of the amount of sickness benefits he received, and he still retains the opportunity to seek a reduction in the deductions amount before the RRB or the SSB's Disputes Committee.

Because we conclude the trial court erred when it directed Railroad to pay full satisfaction of the judgment award, and prevented it from deducting RRTA taxes, an RRB lien and SSB benefits from the jury's award, we vacate the judgment entered on February 25, 2015, and remand for further proceedings consistent with this opinion.

Judgment vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2016