# Illinois Official Reports

## Appellate Court

*Munoz v. Norfolk Southern Ry. Co.*, 2018 IL App (1st) 171009

| | |
|---|---|
| Appellate Court Caption | RAFAEL MUNOZ, Plaintiff-Appellee, v. NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-17-1009 |
| Filed<br>Rehearing denied | June 5, 2018<br>July 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-4331; the Hon. Lorna E. Propes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Karen Kies DeGrand and Kyle A. Cooper, of Donohue Brown Mathewson & Smyth LLC, and Raymond H. Groble and Sean C. Gingrich, of Daley Mohan Groble, P.C., both of Chicago, for appellant.<br><br>William J. McMahon, of Hoey & Farina, P.C., of Chicago, for appellee. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
          Justice Neville concurred in the judgment and opinion.
          Presiding Justice Mason dissented, with opinion.


**OPINION**

¶ 1     Rafael Munoz, a railroad freight conductor, sued his employer, Norfolk Southern Railway Company (Norfolk), under the Federal Employers' Liability Act (FELA), claiming negligence for injuries he incurred at work. A jury awarded Munoz $821,000, including $310,000 for past and future lost wages. After the verdict, Norfolk moved for a setoff, claiming Munoz owed taxes on the lost wages under the Railroad Retirement Tax Act (RRTA). The RRTA funds railroad employees' retirement benefits provided by the Railroad Retirement Act (RRA). The trial court denied the motion, relying on cases holding that, like personal injury judgments under section 104(a)(2) of the Internal Revenue Code (I.R.C. § 104(a)(2) (2012)), the RRTA does not require employers to withhold taxes for FELA personal injury awards.

¶ 2     Norfolk argues that, because the RRTA funds the RRA, they should be read together, which would make a FELA award for lost wages taxable "compensation" subject to a withholding tax. Alternatively, Norfolk contends that if we conclude the applicable RRTA language to be ambiguous, we should look to IRS regulations, which have interpreted "compensation" in the RRTA to include payments for lost wages. Moreover, Norfolk asserts that section 104(a)(2) of the Internal Revenue Code only applies to nonrailroad employees' personal injury awards.

¶ 3     Munoz counters that taxes should not be imposed, as the plain language and legislative history of the RRTA unambiguously exclude a lost-wages award from the definition of "compensation." Alternatively, Munoz asserts that section 104(a)(2) of the Internal Revenue Code, which removes personal injury awards from taxable income, embraces not taxing lost wages awards under the RRTA.

¶ 4     We reject Norfolk's challenge. The RRTA defines "compensation" as money paid to an employee for "services rendered." Lost wages cannot be paid to an employee for "services rendered." And, under the test in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we ignore agency regulations for clarification where, as here, the statutory language provides an unambiguous expression of congressional intent.


¶ 5                                    Background
¶ 6     Rafael Munoz injured his shoulder and neck when a train he was working on in Norfolk's Calumet Yard came to a sudden stop. Munoz sued Norfolk for negligence under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2012)), and sought damages for lost wages, medical bills, loss of future earning capacity, and pain and suffering. Norfolk admitted liability, leaving damages as the only issue. Norfolk asserted in a trial brief that any lost-earnings award must be offset by Munoz's share of RRTA taxes, which, under the RRA, fund railroad employees' retirement benefits. The court did not address the issue at that time.

¶ 7     The trial court instructed the jury, in part, "If you find for the Plaintiff, any damages you award will not be subject to income taxes and therefore you should not consider taxes in fixing

the amount of the verdict." The jury returned a verdict in Munoz's favor, awarding him $821,000 in damages, including $310,000 for past and future lost wages.

¶ 8    Norfolk filed a posttrial motion arguing it had a $14,560.79 statutory lien on the verdict for "sickness benefits" it paid Munoz and asking for a $16,610.23 setoff from Munoz's $310,000 lost-wages award for his share of RRTA taxes. Munoz did not contest the lien for sickness benefits; however, as to his lost-wages portion, Munoz contended lost wages should be treated no differently under the RRTA than other personal injury awards, which are not subject to income tax withholding under the Internal Revenue Code. See I.R.C. § 104(a)(2) (2012) ("gross income does not include *** the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness").

¶ 9    At a hearing on the motion, Norfolk cited state court rulings that held a railroad's payment on a judgment for lost wages equated to "compensation" subject to withholding taxes under the RRTA, including decisions from Nebraska (*Heckman v. Burlington Northern Santa Fe Ry. Co.*, 837 N.W.2d 532 (Neb. 2013)), Iowa (*Phillips v. Chicago Central & Pacific R.R. Co.*, 853 N.W.2d 636 (Iowa 2014)), and Pennsylvania (*Liberatore v. Monongahela Ry. Co.*, 2016 PA Super 79). The trial court, however, followed the Missouri Supreme Court in *Mickey v. BNSF Ry. Co.*, 437 S.W.3d 207, 212 (Mo. 2014), which held in part that, like the exclusion for personal injury awards under Internal Revenue Code section 104(a)(2), a FELA lost-wages award does not constitute income and, therefore, does not qualify as taxable "compensation" under the RRTA. The court also favorably cited *Loy v. Norfolk Southern Ry. Co.*, No. 3:12-CV-96-TLS, 2016 WL 1425952, at *5 (N.D. Ind. Apr. 12, 2016), an unpublished federal district court opinion that adopted a similar reasoning, finding that an injured employee's damage award was "almost by definition personal" and falls under the section 104(a)(2) exclusion.

¶ 10                                    Analysis

¶ 11    Norfolk contends the RRTA is not ambiguous, asserting that the plain language of the RRTA, when read in conjunction with the RRA, supports a finding that a FELA lost-wages award is compensation subject to withholding taxes. Alternatively, Norfolk asserts that if we determine that the RRTA language is ambiguous, we should look to IRS regulations and RRA information notices, which support withholding.

¶ 12    Before turning to the primary issue, we address a contention of *amicus* the Academy of Rail Labor Attorneys (ARLA). According to the ARLA, Norfolk waived its right to a setoff by failing to object when the trial court instructed the jury that it should not consider income taxes in determining Munoz's lost-wages award. The ARLA asserts that under Illinois Supreme Court Rule 239(b) (eff. Apr. 8, 2013), Norfolk had to object to the instruction during the jury instruction conference on grounds that were "particularly specified." Norfolk did not do so, and the ARLA argues that Norfolk cannot raise the issue now, as "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994).

¶ 13    We reject the ARLA's assertion. In a FELA action, it is reversible error for a state trial court to refuse to give the requested instruction on the taxability of damages. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 498 (1980); see also *Argueta v. Baltimore & Ohio Chicago Terminal R.R. Co.*, 224 Ill. App. 3d 11, 18 (1991) (failure to instruct jury on

- 3 -

nontaxability of damages in FELA action constituted reversible error). So the trial court correctly gave the instruction.

¶ 14    Moreover, Norfolk did not waive the issue. Norfolk's trial brief argued that any judgment for lost earnings should be offset by Munoz's share of RRTA taxes. Munoz acknowledged as much in his motion to strike Norfolk's affirmative defenses, stating that, if he recovered, "the proper pleading, if any, would be a motion post-recovery for an offset to the judgment for any amount that may be recoverable to the [Railroad Retirement Board]."

¶ 15                                    Federal Railroad Employee Statutes

¶ 16    Whether withholding taxes under the RRTA applies to a FELA award presents an issue of first impression in Illinois. As this question requires interpretation of federal statutory provisions, a question of law, we apply a *de novo* standard of review. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 22.

¶ 17    We begin with background on the applicable federal statutes. In 1908, Congress, responding to the rising toll of serious injuries and death to railroad workers, enacted the Federal Employers' Liability Act. That year 281,645 railroad workers were injured or killed on the job. *CSX Transportation, Inc. v. McBride*, 564 U.S 685, 691 (2011); see also Jeffrey R. White, *The Taxman Cometh to Your FELA Judgment*, 50-APR Trial 16, 18 (2014). FELA provides railroad workers a statutory negligence cause of action against their railroad employers, with a right to a jury trial. State and federal courts have concurrent jurisdiction over FELA actions. 45 U.S.C. § 56 (2012). In state court, state procedural law and federal substantive law govern a FELA action. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985).

¶ 18    In addition, Congress enacted legislation to provide railroad employees a separate retirement and disability benefits system. Instead of Social Security benefits, railroad employees participate in a pension system under the RRA (45 U.S.C. §§ 231-231v (2012)), adopted in 1934. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 573 (1979). RRA benefits consist of two tiers. Tier 1 benefits are the railroad equivalent of Social Security benefits. 45 U.S.C. § 231b(a) (2012); *Hisquierdo*, 439 U.S. at 574-75. Tier 2 benefits are a "supplemental annuity" based on years of service and the employee's compensation. 45 U.S.C. § 231b(b) (2012).

¶ 19    Taxes imposed under the RRTA, which is part of the Internal Revenue Code, fund RRA benefits. *Hance v. Norfolk Southern Ry. Co.*, 571 F.3d 511, 522 (6th Cir. 2009). Tier 1 taxes " 'are analogous to taxes imposed on nonrailroad workers by the Federal Insurance Contributions Act (FICA).' " *Loos v. BNSF Ry. Co.*, 865 F.3d 1106, 1116 (8th Cir. 2017), *cert. granted*, 2018 WL 574942 (May 14, 2018) (quoting *Cowden v. BNSF Ry. Co.*, No. 4:08CV01534 ERW, 2014 WL 3096867, at *2 (E.D. Mo. July 7, 2014)). Tier 2 tax rates are based on the investment performance of and distributions from the Railroad Retirement Account and the National Railroad Retirement Investment Trust. I.R.C. §§ 3221(b), 3241 (2012). Railroad employers withhold their own share and their employees' tax shares, and they submit both to the IRS. I.R.C. §§ 3201, 3202, 3221(a)-(b) (2012). Though closely related, the RRTA and the RRA are handled by separate administrative agencies (the Internal Revenue Service (IRS), and the Railroad Retirement Board (RRB), respectively). See *id.* § 3221. They also operate under separate regulations.

¶ 20    The amount of an individual employee's Tier 1 and Tier 2 taxes depends on the employee's "compensation." See *id.* §§ 3201(a)-(b), 3221(a)-(b) (2012). The RRA defines

- 4 -

"compensation" as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers *** including remuneration paid for time lost as an employee." 45 U.S.C. § 231(h)(1) (2012). The RRA defines "pay for time lost" as "the amount [the employee] is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury." *Id.* § 231(h)(2). Thus, the RRA defines compensation as including FELA lost-wages awards. The RRB also has interpreted compensation to encompass FELA judgment awards for lost wages and, thus, considers them when calculating the employee's benefits. See R.R. Ret. Bd., Railroad Retirement Service Credits and Pay for Time Lost 3 (May 2008), https://www.rrb.gov/sites/default/files/2017-05/QA0805.pdf.

¶ 21                              Compensation Under the RRTA

¶ 22      At one time, the RRTA defined "compensation" to include lost wages, but Congress amended the statute in 1975 and again in 1983, removing all reference to "pay for time lost." Section 3231(e) of the RRTA now defines compensation as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." I.R.C. § 3231(e)(1) (2012). Section 3231(e)(1) includes numerous exceptions to its definition of compensation, none of which refer to lost wages or FELA awards.

¶ 23      For years, it was generally accepted that, like damages for personal injury awards under section 104(a)(2) of the Internal Revenue Code, neither the RRTA nor the IRS required railroads to withhold taxes when paying FELA judgments. White, *supra*, at 18. Then, in 2013, the Nebraska Supreme Court issued an opinion in *Heckman*, holding that a general verdict in a FELA case is presumptively for time lost, making the entire award subject to RRTA withholding taxes. *Heckman*, 837 N.W.2d at 543 ("Under the RRA, the entire award is compensation subject to RRTA taxes that must be paid by the employer.").

¶ 24      Several other state supreme courts followed *Heckman*'s lead, holding that FELA lost-wages awards constitute compensation subject to RRTA taxes. See *Liberatore*, 2016 PA Super 79, and *Phillips*, 853 N.W.2d 636. These decisions rely on findings, in whole or in part, that (i) "compensation" must be broadly defined under the RRTA to further the goals of the railroad retirement system, (ii) the RRTA and the RRA must be read together as they work in tandem to implement the federal railroad retirement system and the RRA defines compensation to include remuneration for time lost as an employee, and (iii) the IRS and RRB have interpreted the RRTA's definition of compensation to include payments for lost wages due to personal injury. Norfolk urges us to follow this line of cases.

¶ 25      Norfolk further challenges the trial court's reliance on *Mickey* and *Loy*, which held that the exclusion from FICA taxes for personal injury awards under Internal Revenue Code section 104(a)(2) applies to FELA awards under the RRTA. Norfolk asserts that section 104(a)(2) is irrelevant because different statutes govern FICA taxes and RRTA taxes and an inclusion or exclusion under one statute does not constitute an inclusion or exclusion under the other.

¶ 26      Munoz acknowledges the differences between FICA and the RRTA but contends that if lost-wages damages are not income under the Internal Revenue Code or wages under the broad definition in FICA, they cannot be considered "compensation" under the narrower definition in the RRTA. Moreover, Munoz asserts that neither the plain language of the RRTA nor its statutory history requires withholding taxes from an employee's FELA award and the IRS

overstepped its authority in issuing regulations that conflict with the statute and congressional intent.

¶ 27    For support, Munoz cites *Loos*. In *Loos*, the plaintiff sued his employer, BNSF, alleging, in part, that the railroad negligently caused his knee injury. *Loos*, 865 F.3d at 1109-10. The FELA claim resulted in a jury verdict in Loos's favor for pain and emotional distress, lost wages, and past medical expenses. *Id.* at 1111. BNSF moved to offset the lost-wages award by the amount of Loos's share of taxes owed under the RRTA. *Id.* The trial court denied the motion, finding no RRTA tax to be owed on the award. *Id.*

¶ 28    The appellate court affirmed. The court agreed with the railroad that under IRS regulations, "damages for lost wages fit well within the definition of 'compensation.'" *Id.* at 1117. Specifically, the court noted that RRB considers FELA judgment awards when calculating an employee's benefits. *Id.* (citing R.R. Ret. Bd., Railroad Retirement Service Credits and Pay for Time Lost 3 (May 2008), https://www.rrb.gov/sites/default/files/2017-05/QA0805.pdf). The court also noted that IRS regulations interpret "compensation" under the RRTA as having "the same meaning as the term wages in [FICA] *** except as specifically limited by the [RRTA] *** or regulation" (26 C.F.R. § 31.3231(e)-1(a)(1) (2013)) and that "[t]he term *compensation* is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is absent from the active service of the employer" "as well as pay for time lost." (Emphasis in original.) 26 C.F.R. § 31.3231(e)-1(a)(3)-(4) (2013).

¶ 29    And the court acknowledged that IRS regulations interpreting statutes the agencies enforce would typically receive deference, but only in the event that the RRTA is ambiguous on whether FELA damages for lost wages are "compensation." For, if "'Congress has directly spoken to the precise question at issue'" "'that is the end of the matter: for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Loos*, 865 F.3d at 1117 (quoting *Chevron U.S.A. Inc.*, 467 U.S. at 842-43). Otherwise, "'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron U.S.A. Inc.*, 467 U.S. at 843).

¶ 30    Examining the RRTA's plain text, the *Loos* court observed that, although damages for lost wages are a "form of money remuneration paid to an individual," the RRTA only considers that type of remuneration "compensation" when paid "for services rendered as an employee." *Id.* Damages for lost wages are not remuneration "for services rendered" but are, by definition, remuneration for a period of time when the employee did not actually render any services. *Id.* The damages compensate the employee for wages the employee should have earned had he or she been able to render services. *Id.* The court acknowledged that in the FICA context, the United States Supreme Court has broadly defined wages to include compensation for "not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." See *Social Security Board v. Nierotko*, 327 U.S. 358, 365-66 (1946) (deeming SSA to cover back pay); *United States v. Quality Stores, Inc.*, 572 U.S. ___, ___, 134 S. Ct. 1395, 1400 (2014) (relying on *Nierotko* to deem severance payments "wages" under FICA).

¶ 31    But under the plain language of the RRTA, compensation has a much narrower definition; the RRTA refers to services that an employee actually renders, not services that the employee would have rendered but could not. See I.R.C. § 3231(e)(1) (2012); see also *id.* § 3231(d) (defining "service")." So damages for lost wages do not fit within the RRTA's plain meaning of compensation. *Loos*, 865 F.3d at 1118.

- 6 -

¶ 32    The dissent contends the RRTA is ambiguous because it fails to specifically exclude payment for lost time in its definition of compensation, while the RRA specifically includes lost-time payments in its definition. The dissent asserts that under *Chevron*, this supposed ambiguity requires us to look beyond the language of the RRTA and, specifically, to look to IRS regulations to discern congressional intent. But, by looking to the RRA for guidance, the dissent ignores the first step in the *Chevron* analysis, creating an ambiguity where none exists. Congress has directly spoken to the precise question of whether payment for lost time is compensation under the RRTA, and under *Chevron*, "that is the end of the matter." *Chevron U.S.A. Inc.*, 467 U.S. at 842-43. We need not look to the RRA or anywhere else for clarification and must give effect to the unambiguously expressed intent of Congress.

¶ 33    During oral argument and in its brief, Norfolk noted that section 3231(e)(1) lists numerous exclusions to its definition of compensation but did not include personal injury awards for lost earnings from the enumerated exclusions. Norfolk asks us to apply the maxim of statutory construction, *expressio unius est exclusio alterius*—the expression of one thing excludes any other thing—to find that, because Congress did not specifically exclude a lost-wages award, it intended to include it in the definition of compensation.

¶ 34    Known as the "negative implication canon," (*Jennings v. Rodriguez*, 583 U.S. ___, 138 S. Ct. 830 (2018) (plurality opinion)), the maxim *expressio unius est exclusio alterius* sets out a rigid rule of construction that must be applied with "great caution" to avoid bringing about an unfair and unjust outcome. *Ford v. United States*, 273 U.S. 593, 612 (1927) ("The 'exclusio' is often the result of inadvertence or accident, and the maxim ought not to be applied, when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice." (Internal quotation marks omitted.)). The maxim is applied only when it appears to point to the intent of the legislature, not to defeat an otherwise powerful indication of legislative intent. *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013); *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 153-55 (1997). Essentially, we employ the maxim to resolve an ambiguity, not to create an ambiguity. See *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). Further, the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974). Unlike the dissent, we find no ambiguity in the language of the statute or in Congress's intent—lost-wages awards are not compensation under the RRTA—so, there is no need to refer the maxim for aid.

¶ 35    Norfolk, like the defendant in *Loos*, argues that, because the RRTA exists to fund RRA benefits, we must read the two statutes as one law and consider the RRA's definition of "compensation," which includes pay for lost-wages. Norfolk asserts that defining an employee's receipt of compensation one way for taxation purposes under the RRTA and a different way for the calculation of benefits under the RRA would threaten the sustainability of the national railroad retirement system and thwart Congress's goals.

¶ 36    We disagree. As the *Loos* court stated " '[g]iven these linguistic differences, the question here is not whether identical or similar words should be read *in pari materia* to mean the same thing. Rather, the question is whether Congress intended its different words to make a legal difference.' " *Loos*, 865 F.3d at 1118 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-63 (2006)). "That Congress expressly included pay for time lost in the RRA's definition of 'compensation' yet omitted it from the RRTA's definition of

'compensation' suggests that Congress did not intend the RRTA to include pay for time lost." *Id.*

¶ 37     The *Loos* court also found that the RRTA amendments confirmed an intentional difference with the RRA. *Id.* Before 1975, the RRTA's definition of "compensation" expressly included "pay for time lost." Using language and structure identical to that of the RRA, the RRTA defined "compensation" as "any form of money remuneration earned by an individual for services rendered as an employee to one or more employers, or as an employee representative, including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost." I.R.C. § 3231(e)(1) (1970). Section 3231(e)(2) further provided, in part, that a "payment made by an employer to an individual through the employer's payroll shall be presumed, in the absence of evidence to the contrary, to be compensation for service rendered by such individual as an employee of the employer in the period with respect to which the payment is made. An employee shall be deemed to be paid 'for time lost' the amount he is paid by an employer with respect to an identifiable period of absence from the active service of the employer, including absence on account of personal injury." I.R.C. § 3231(e)(2) (1970).

¶ 38     In 1975, Congress amended the RRTA, removing "pay for time lost" from the definition of "compensation" in section 3231(e)(1) but retaining the definition of "pay for time lost" in section 3231(e)(2). *Loos*, 865 F.3d at 1118. In 1983, Congress again amended section 3231(e) to " 'remove[ ] all language addressing payments for time lost and for personal injury.' " *Id.* (quoting *Cowden*, 2014 WL 3096867, at *6). Thus, the *Loos* court concluded, " '[i]t is beyond dispute that the plain language of the RRTA once provided for payments for time lost on account of personal injury, but no longer does.' " *Id.* at 1118-19 (quoting *Phillips*, 853 N.W.2d at 647).

¶ 39     The *Loos* court acknowledged the argument that the RRTA should tax what the RRA uses to calculate benefits "makes sense as a statutory scheme," but it concluded that statutory scheme no long exists after the 1983 amendments. The court refused to import from the RRA the language Congress eliminated from the RRTA. While "under the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law" (internal quotation marks omitted) (*Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006)), the relationship between the RRTA and the RRA does not require it. *Loos*, 865 F.3d at 1119 (explaining that RRTA " 'taxes paid by and on behalf of an employee do not necessarily correlate with the benefits to which the employee may be entitled' " under RRA (quoting *Hisquierdo*, 439 U.S. at 574-75)). Therefore, the court would not read the two acts *in pari materia* and found it to be inappropriate to import the RRA's definition of "compensation" into the RRTA. *Id.*

¶ 40     Norfolk asserts, however, that Congress indicated that the purpose of the RRTA's 1983 amendment was to improve the financial status of the railroad retirement system to ensure future solvency and preclude the need for benefit reductions. See H.R. Rep. No. 98-30(II) (1983), *reprinted in* 1983 U.S.C.C.A.N. 813, 819, 1983 WL 25318. Norfolk argues that purpose necessarily included continuing to treat payments for time lost as compensation, as tax revenue had to keep pace with RRA benefits. Norfolk also points out that after the IRS issued regulations defining compensation to include amounts paid for a period of time when the employee is absent from work, Congress did not amend the RRTA to clarify that it intended for FELA lost-wages awards to not be subject to withholding taxes. Thus, contends Norfolk, the

legislative history supports the conclusion that Congress intended to continue treating pay for time lost as compensation that was subject to mandatory employer withholding and taxation.

¶ 41    Whatever the amendment's overall purpose, it does not necessarily follow that Congress intended to continue to treat time lost as "compensation," having deleted from the statute all references to pay for time lost. We agree with the holding in *Loos*, that the RRTA is unambiguous and does not include damages for lost wages within the definition of "compensation." As a result, IRS and RRB regulations providing to the contrary do not receive deference, as " 'the agency[ ] must give effect to the unambiguously expressed intent of Congress.' " *Loos*, 865 F.3d at 1119 (quoting *Chevron*, 467 U.S. at 842-43).

¶ 42    We conclude that Munoz's FELA award is not subject to withholding under the RRTA and the trial court properly denied Norfolk's motion for a setoff. Because we affirm on this basis, we do not need to consider whether the trial court correctly relied on *Mickey* and *Loy* or whether section 104(a)(2) of the Internal Revenue Code (I.R.C. § 104(a)(2) (2012)) applies to the RRTA.

¶ 43    The dissent suggests our result "produces a financial windfall for injured railroad employees." During oral argument, counsel for the IRS stated that a railroad employer pays RRTA taxes on lost-time awards even if the employer is unable to deduct from the award the employee's share of the taxes. The dissent concludes this leaves an injured railroad employee in a better position than they would have been had they not been injured, as they receive the same retirement benefits as noninjured employees, but pay less for those benefits. This assertion presumes injured railroad employees are receiving the same benefits as noninjured employees, a question of fact the parties did not raise before the trial court. Munoz's counsel contradicted the IRS counsel, stating during oral argument that railroad employers do not pay taxes on FELA awards, injured employees do not receive credit for time lost, and their retirement benefits are not affected. We admonished Munoz's counsel that because the parties did not raise this issue in the trial court, it was not properly before us. So the dissent's contention that our result will produce a windfall for injured railroad employees rests on a factual finding not in the record.

¶ 44    Affirmed.

¶ 45    PRESIDING JUSTICE MASON, dissenting:

¶ 46    I respectfully dissent from my colleagues' conclusion that Munoz's FELA award is not subject to withholding under the RRTA. The majority's decision is premised on its finding that the RRTA unambiguously excludes lost time from its definition of compensation. But the RRTA, on its face, does not list lost time among the specific categories of exclusions from compensation: it defines compensation as "any form" of remuneration paid for services rendered as an employee and goes on to list several exclusions from that definition, lost time not being among them. I.R.C. § 3231(e) (2012). While Congress may have meant that compensation included only remuneration for actual work performed, and not remuneration in the form of damage awards for time absent from work due to injury, Congress's meaning is unclear from the language of the statute and leads me to conclude that the section 3321(e) of the RRTA is ambiguous. The ambiguity inherent in this section is compounded by the fact that that the RRA, which is "inextricably interconnected" with the RRTA in that the latter funds the former, includes "remuneration paid for time lost" in its definition of compensation. *Phillips*,

853 N.W.2d at 649 (citing 45 U.S.C. 231(h)(1) (2006)). For this reason, I would proceed to the second step of the *Chevron* analysis, which requires the court to determine if the agency's regulation is based on a permissible construction of the statute. See *Chevron*, 467 U.S. at 843 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute.").

¶ 47    The IRS, in its capacity as the agency charged with administering the RRTA, considered whether Congress intended the 1975 and 1983 amendments to the statute to eliminate payment for lost time from the definition of compensation. Update of Railroad Retirement Tax Act Regulations, 59 Fed. Reg. 66188 (Dec. 23, 1994). After notice and comment in 1994, the IRS concluded that Congress did not so intend (*id.*), and the IRS promulgated regulations defining compensation to include payment for lost time (26 C.F.R. 31.3231(e)-1(a)(4) (2013)). In my view, this is a permissible construction of section 3231(e) that is entitled to deference under *Chevron*.

¶ 48    Certainly, it is relevant, as the majority points out, that Congress removed a reference to "lost time" from the definition of compensation in section 3231(e) first in 1975 and then completely in 1983. *Supra ¶* 22. And while this deletion could have led the IRS to conclude, as the majority does, that compensation for lost time is not subject to RRTA tax, that conclusion is by no means the only reasonable construction to be drawn. See *Phillips*, 853 N.W.2d at 648. Instead, the legislative history suggests that the removal of the reference to lost time was motivated by the need to address the issue of when compensation would be recognized and taxed under the RRTA. See *Chicago Milwaukee Corp. v. United States*, 35 Fed. Cl. 447, 456 n.6 (Fed. Cl. 1996) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. United States*, 628 F. Supp. 1431 (D. Kan. 1986)). Specifically, by way of these amendments, Congress clarified that the RRTA tax should be assessed on compensation at the rate in effect when the lost-time award is paid, as opposed to when the compensation underlying the award would have been earned had the employee not been injured. *Id.* To that end, the legislature deleted certain provisions in section 3231(e) providing that time lost is to be deemed earned in the month when the injured employee was off work, reflecting the view that when compensation was deemed earned was irrelevant to the rate at which compensation when paid was taxable. *Id.* Accordingly, the legislative history does not indicate that Congress intended to change the substantive definition of compensation when it removed the reference to "lost time" from section 3231(e). *Id.*

¶ 49    Further, the statute has been amended four times since the IRS enacted its 1994 regulation, and Congress has not added an exclusion for lost wages from the definition of compensation. See *Phillips*, 853 N.W.2d at 642-43 (listing amendments). This supports the conclusion that Congress did not disagree with the IRS's interpretation. See *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) ("[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (quoting *National Labor Relations Board v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974))). Consequently, because the IRS's interpretation of section 3231(e) is not unreasonable, we should give it deference under *Chevron*.

¶ 50    Also significant is the fact that the purpose behind the 1983 amendment to the RRTA was to financially stabilize the benefits payable under the RRA. This purpose is reflected not only

in the title of the amendatory act—Railroad Retirement Solvency Act of 1983—but in its preamble, which states, in relevant part "An Act to amend the *** Railroad Retirement Tax Act to assure sufficient resources to pay current and future benefits under the Railroad Retirement Act of 1974 ***." Railroad Retirement Solvency Act of 1983, Pub. L. No. 98-76, 97 Stat. 411 (1983); see *Atkins v. Deere & Co.*, 177 Ill. 2d 222, 232 (1997) (where statutory language is ambiguous, preamble is among "quintessential sources" of legislative intent). One of the sources of revenue for benefits payable under the RRA is the share of the RRTA tax payable by railroad employees. Given the amendment's purpose, it makes little sense that Congress, in omitting "lost time" from the definition of compensation, actually intended to remove a source of revenue for funding retirement benefits. Nor is there anything in the amendatory act to indicate that Congress intended to shift the entire RRTA tax burden to employers when railroad employees recover damages for lost time.

¶ 51    The result reached by the majority produces a financial windfall for injured railroad employees. At oral argument, counsel for the IRS informed the court that the agency requires payment of RRTA taxes on lost-time awards whether or not the railroad employer is able to deduct from the award the employee's share of those taxes. Thus, the effect of refusing to allow a setoff for the employee's share of RRTA taxes from a lost-time award is to require the railroad to pay both its and the injured employee's share of the tax. This leaves an injured employee better off, in terms of retirement benefits, than a similarly situated noninjured employee who must pay his or her share of RRTA taxes on wages as they are earned. The well-settled purpose of tort damages is to place the injured party in the same position as if he had not been injured. See *Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219, ¶ 54 (citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 406 (1997)). The decision here places injured railroad employees in a better position than they would have been had they not been injured, as they receive the same retirement benefits as noninjured employees but pay less for those benefits.

¶ 52    For these reasons, I would reverse the decision of the trial court and allow the railroad's request for a setoff.